Filed 5/28/13  P. v. Arana CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>CLAUDIA MUNOZ ARANA,<br><br>  Defendant and Appellant. | D062418<br><br><br><br>(Super. Ct. No. SCD237855) |


APPEAL from a judgment of the Superior Court of San Diego County, Peter C. Deddeh, Judge.  Affirmed.

CSLlegal, Jeremy M. Evans for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Michael Pulos, Deputy Attorneys General, for Plaintiff and Respondent.


Claudia Munoz Arana appeals from a judgment convicting her of burglary arising from her participation in a theft of clothing from a store.  She argues (1) the trial court erred in admitting evidence of her prior petty theft offense to show intent and common

plan; (2) there is insufficient evidence to show she entered the store with intent to steal; and (3) the court erred in dismissing a juror as unfit to serve. We find no error and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The charged offense was committed by defendant and an accomplice (Patricia Gomez) on December 1, 2011, at a shopping mall. Loss prevention officer Jesus Alvarez and police officer Allyson Boyd were working at the mall in an undercover capacity to identify and apprehend shoplifters. While the two officers were in Express clothing store, Alvarez became suspicious about defendant and Gomez. Defendant was pacing back and forth in a nervous fashion with men's jackets draped over her arm. Gomez was nearby at a clothing rack.[1] On the floor near Gomez, there was a large, nearly empty shopping bag from a different store in the mall and a toy box. Shoplifters frequently bring a bag with them to use to conceal stolen merchandise.

Alvarez alerted Officer Boyd about the suspicious activity. Alvarez went outside the store to monitor the situation by looking through the front store window, while Officer Boyd conducted surveillance from inside the store. Officer Boyd noticed that defendant was behaving suspiciously rather than like a normal shopper; she would pick up men's clothing without examining it, look around, put the clothing down, and walk off. Both defendant and Gomez were looking around nervously and "eyeball[ing]" the

---

[1] On cross-examination, Alvarez acknowledged that in his written report prepared the day of the incident, he stated that Gomez was the one who had the jackets over her arm. Alvarez explained that he identified the women as "S-1" and "S-2" in his report and he used the wrong identifier when describing who was holding the jackets.

2

employees. The two women "[met] up with each other at least once or twice" and it appeared that they knew each other and were together. After a couple of minutes, Officer Boyd was concerned that the women might notice she was watching them, so she went to the store's jewelry section where she could no longer see the women and left the surveillance to Alvarez.

As Alvarez was leaving the store, he saw defendant and Gomez huddled together near the clothing rack where Gomez had been standing. Once he was outside the store, he saw defendant and Gomez stuffing the jackets into the bag that was on the floor. Gomez then grabbed the toy box and placed it into the top of the bag. Gomez came to the front entrance of the store, looked both ways as if checking for mall security, and went back into the store. While Gomez was doing this, defendant remained in the store near the bag. As soon as Gomez reentered the store, both women left the store, walking at a fast pace and without paying for the merchandise. Gomez was carrying the bag.

Alvarez ran and told Officer Boyd about the theft, and the two officers jogged after the women who were quickly walking away through the mall. Officer Boyd yelled, "San Diego police, stop" and displayed her badge. After both women turned around and looked at Officer Boyd, Gomez (who was still carrying the shopping bag) stopped walking. Defendant "looked alarmed" and resumed quickly walking away. Officer Boyd sprinted after defendant, cut in front of her, and ordered her to stop.

Officer Boyd told the women that they were seen stealing from the Express store; asked to search the bag; and found three men's jackets in the bag with a total value of $737.01. The security sensors had been removed from the jackets, and during a search of

3

the store, the police found three sensors hidden in a pocket in a pair of pants. When the police searched defendant and her purse, there was nothing inside the purse and she had no car keys, cash, credit or debit cards, or checks in her possession. Officer Boyd testified that experienced shoplifters tend not to carry their car keys or identification with them in an attempt to avoid a vehicle search and detection of their identity.

### *Prior Offense Evidence*

To show intent to steal and common plan, the prosecution introduced evidence of a prior petty theft offense committed by defendant and Gomez at another shopping mall in February 2011, about 10 months before the current offense. When defendant and Gomez walked into the mall, loss prevention officer Terrence Wilkerson thought they were potential shoplifters because they were walking at a high rate of speed; both were carrying purses that appeared empty; and Gomez was carrying a shopping bag from a retail store that appeared empty. After the women entered a clothing store, defendant acted as a lookout while Gomez filled the shopping bag with clothing. The women then left the store at a fast pace without paying for the merchandise. Wilkerson summoned the police, and defendant and Gomez were arrested. While defendant was detained, she tried to hide a tool (used to remove security sensors from merchandise) in a planter next to the bench where she was seated.

### *Jury Verdict and Sentence*

The jury found defendant guilty of burglary. The trial court denied probation and sentenced her to 180 days in custody.

4

DISCUSSION

## I. *Admission of Prior Petty Theft Evidence*

Defendant argues the trial court erred in admitting the evidence of her prior petty theft offense. The court ruled the evidence was highly probative to show intent and common plan and it was not unduly prejudicial.

Evidence of the defendant's other crimes that are not charged in the current case is generally inadmissible for purposes of showing the defendant's bad character or propensity to commit crimes. (*People v. Kipp* (1998) 18 Cal.4th 349, 369.) The rationale for excluding other crimes evidence is that the jury might convict because of the defendant's criminal propensity or bad character regardless of whether guilt is proven beyond a reasonable doubt. (See *People v. Alcala* (1984) 36 Cal.3d 604, 631.) However, other crimes evidence may be admitted for the limited purpose of proving material facts apart from criminal disposition, such as intent or common plan. (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 203; *People v. Demetrulias* (2006) 39 Cal.4th 1, 14.)

To be relevant to intent or common plan, the conduct during the uncharged and charged acts must be sufficiently similar to support a rational inference that the defendant probably harbored the same intent or plan in each instance. (*People v. Kipp, supra*, 18 Cal.4th at p. 369; *People v. Cole* (2004) 33 Cal.4th 1158, 1194.) Because of the prejudice inherent in other crimes evidence, the evidence must have substantial probative value, and the trial court must evaluate under Evidence Code section 352 whether the probative value is outweighed by the probability of undue prejudice, confusing the issues,

or misleading the jury. (*Kipp, supra*, at p. 371.) We review the trial court's rulings for abuse of discretion. (*Id.* at pp. 369, 371.)

Defendant argues the court should have excluded the prior petty theft evidence under Evidence Code section 352 because the petty theft conduct was so similar to the charged conduct (including that the conduct was close in time and involved the same accomplice) that the jury would have been unable to separate the prior offense from the current offense. The contention is unavailing.

To establish the charged burglary offense, the prosecution had to prove that defendant entered the store with the intent to commit theft or any felony. (Pen. Code,[2] § 459.) The strong similarity between the current and prior offenses increased the relevancy of the prior offense to show that in the current offense defendant went into the store with the intent to participate in the theft activity with Gomez. Evidence showing that defendant and Gomez had previously shoplifted from a store using a particular modus operandi supported that defendant had this same intent and was carrying out the same scheme during the charged incident involving a similar shoplifting scenario.

Defendant has not shown that the jury would be unable to separate the prior offense from the current offense. We assume that jurors are intelligent persons who understand and follow the court's instructions. (*People v. Gray* (2005) 37 Cal.4th 168, 217; *People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.) The jurors were instructed that if they found the prior petty theft offense true by a preponderance of the evidence

[2]   Subsequent unspecified statutory references are to the Penal Code.

6

they could consider the evidence to decide if in the current case defendant acted with the intent to commit theft or had a plan or scheme to commit the alleged offense. The jurors were also instructed about the limitations on the use of the evidence; i.e., they could not consider the evidence for any other purpose; the evidence was only one factor to consider along with all the other evidence; the evidence was not by itself sufficient to prove guilt; and the prosecution must prove the charge beyond a reasonable doubt. (See CALCRIM No. 375.) Based on these instructions, reasonable jurors would understand that the fact that defendant engaged in a prior shoplifting incident with Gomez could not prove her guilt of the charged offense unless the jurors were convinced beyond a reasonable doubt that she committed the current offense based on all the evidence. Thus, the jurors knew that although they could consider the prior offense when evaluating defendant's intent and conduct during the charged incident, they had to independently evaluate the evidence concerning the charged offense and could not assume defendant was guilty based only on her commission of the prior crime.

Defendant also argues that the commission of one prior offense is not sufficient to show a common plan or scheme. To be relevant on the issue of common plan, the charged and uncharged offenses must share common features indicating the existence of a plan rather than a series of spontaneous acts. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402-403.) There is no requirement that there be a certain number of prior offenses to show the existence of a plan. The trial court could reasonably find that a plan to engage in shoplifting can emerge from one prior incident of shoplifting followed by a current charge of shoplifting.

The trial court did not abuse its discretion in admitting the prior offense evidence.

## II. *Sufficient Evidence of Burglarious Intent*

Defendant asserts there was insufficient evidence to support that she entered the store with the intent to steal.

When reviewing a challenge to the sufficiency of the evidence, we examine the entire record in the light most favorable to the judgment to determine whether there is substantial evidence from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. (*People v. Nelson* (2011) 51 Cal.4th 198, 210.) We presume in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence. (*Ibid*.) If the circumstances reasonably justify the jury's findings, reversal is not warranted merely because the circumstances might also reasonably be reconciled with a contrary finding. (*Ibid*.) It is the exclusive province of the jury to determine credibility and to resolve evidentiary conflicts and inconsistencies in testimony. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) Because intent can seldom be proved by direct evidence, it may be inferred from the circumstances. (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1574.)

Here, the jury was entitled to credit loss prevention officer Alvarez's testimony that he saw defendant and Gomez stuffing the stolen jackets inside the bag. From this evidence, the jury could reasonably infer that when defendant went into the store, she had the intent and plan to participate in the theft of clothing with Gomez. This inference is buttressed by Alvarez's and Officer Boyd's assessments that defendant was behaving suspiciously when she was initially observed inside the store, including pacing back and

8

forth with jackets over her arm, looking nervously around, and handling merchandise in a manner unlike a normal shopper. Further, she was carrying a purse with nothing inside, which supported an inference that she was not at the mall for legitimate shopping purposes. Additionally, she had previously committed shoplifting at a mall with Gomez, which supported that she had the intent and plan to engage in the same endeavor during the charged incident. Based on Alvarez's eyewitness testimony, the circumstances surrounding the current incident, and the prior shoplifting incident, the record supports a finding that defendant entered the store with the intent to steal.

### III. *Dismissal of Juror*

Defendant argues the trial court abused its discretion when it dismissed Juror No. 1 from the jury during trial and replaced him with an alternate juror.

### *Background*

On the second day of trial after two witnesses had testified, the court called a short recess because Juror No. 1 had asked to use the restroom. During the recess outside the presence of the jury, the court told the parties that it was concerned about Juror No. 1's behavior. The court stated that when Juror No. 1 first arrived and sat down that morning, the court noticed he was "behaving bizarrely," and his inappropriate behavior continued during the witness testimony. The court explained:

> " . . . I noticed that he was kind of behaving bizarrely, sort of nodding off and . . . his head would snap up, and his eyes kept closing, and then he'd open them. . . . And then as the testimony of Mr. Alvarez was unfolding,

9

he was making kind of bizarre hand gestures and pointing at the screen. And then he asked a question, which was kind of unusual.[3]

"But his demeanor is completely different than yesterday. Yesterday he was not behaving this way at all.

"And then he made some comments . . . sort of like popping off, basically, when . . . a couple of witnesses were testifying, inappropriately laughing and guffawing, and then he apparently said . . . bullshit [or shit] at some point. . . .

[¶] . . . [¶]

". . . I heard something that was an outburst, and I didn't hear exactly what it was. . . . And he's making other jurors uncomfortable because he's kind of moving around, too, and fidgety.

"And so when I first saw him, I thought oh, he's under the influence of something. And it's very apparent to me that he is under the influence of something, and not just a person that's kind of behaving bizarrely or—and then apparently one of the other jurors . . . came up to my bailiff and said that he had been drinking. And maybe she knew that because he talked to her, said something to her."

The court stated that it did not think Juror No. 1 was "fit to serve at this time"; the other juror had provided "some verification" that he was "probably under the influence of something"; and his behavior was distracting and making other jurors uncomfortable. The court proposed to dismiss Juror No. 1, and to accomplish this by having the bailiff tell the juror that he did not need to return to the courtroom. Defense counsel objected, stating that there was "no foundation" for the removal without first at least conducting an inquiry with the juror and that the behavior could be rectified with a "strict admonishment." The court disagreed, stating it had already admonished the juror "once

---

3     Prior to testimony on the second trial day, the juror had asked the court the date that photographs presented by defense counsel had been taken.

when he popped off gratuitously during the testimony, and then he did it again."  The

court found Juror No. 1 had "already demonstrated that he's not fit to serve," and declined

to question him on the matter.

Consistent with the court's observations, the reporter's transcript reflects that

during the witness testimony Juror No. 1 frequently laughed and made comments.[4]

When Juror No. 1 interjected a comment for the third time, the court admonished him,

stating, "We don't need any comment from you, okay?"  Juror No. 1 responded, "Oh,

sorry."  However, Juror No. 1 thereafter interjected two more comments, after which the

court called the recess, held the sidebar conference, and decided to dismiss him from the

jury.

*Analysis*

A trial court has discretion to dismiss a juror if upon "good cause shown to the

court [the juror] is found to be unable to perform his or her duty . . . ."  (§ 1089; *People v.*

*Boyette* (2002) 29 Cal.4th 381, 462.)  "While a trial court has broad discretion to remove

a juror for cause, it should exercise that discretion with great care."  (*People v. Barnwell*

(2007) 41 Cal.4th 1038, 1052, fn. omitted.)  The juror's inability to perform as a juror

must appear in the record as a demonstrable reality.  (*People v. Boyette, supra*, at p. 462.)

On appeal, our review under the " 'demonstrable reality test' " is more stringent than

under the "typical abuse of discretion standard."  (*People v. Fuiava* (2012) 53 Cal.4th

---

[4]    The reporter's transcript records Juror No. 1 as laughing in four instances, and
making the comments "Who does—"; Ouch"; "Express—"; "Oh, my God"; and "Oh,
shit."  The court admonished Juror No. 1 when he interjected the comment, "Express—"
Juror No. 1 requested to use the restroom after saying, "Oh, shit."

11

622, 711; *People v. Barnwell, supra*, 41 Cal.4th at p. 1052.) The demonstrable reality test requires a showing that the trial court actually relied on evidence that supports dismissal, and on appeal "the reviewing court must be confident that the trial court's conclusion is manifestly supported by evidence on which the court actually relied." (*People v. Barnwell, supra*, 41 Cal.4th at pp. 1052-1053.)

However, the "*manner* in which the trial court conducted its inquiry [on a juror's fitness to serve] is subject to review for abuse of discretion under the typical standard." (*People v. Fuiava, supra*, 53 Cal.4th at p. 712; *People v. Clark* (2011) 52 Cal.4th 856, 971 [court has broad discretion in deciding whether and how to conduct an inquiry].) For example, a trial court has the discretion to decide that " 'a juror's disqualification is so clear that further [inquiry] is pointless . . . .' " (*People v. Fuiava, supra*, 53 Cal.4th at p. 714.)

Defendant asserts the court improperly relied on hearsay from another juror and the court's unfounded beliefs that Juror No. 1 was intoxicated, and it should have questioned Juror No. 1 to determine whether he was intoxicated. Also, defendant contends the court should have admonished Juror No. 1, not dismissed him. We are not persuaded.

The court personally observed Juror No. 1's bizarre behavior and found it was "very apparent" that he was under the influence, which observation was corroborated by another juror's assessment that was communicated to the bailiff. On appeal, "we afford deference to the trial court's factual determinations, based, as they are, on firsthand observations unavailable to us on appeal." (*People v. Barnwell, supra*, 41 Cal.4th at p.

12

1053.) The court admonished the juror to stop making comments during witness testimony, and yet the juror was apparently unable to control himself because he continued to make comments. The trial court reasonably concluded that a juror who appears intoxicated and who cannot refrain from making comments and laughing during witness testimony is unfit to serve on the jury. The juror's apparent intoxication and repeated inappropriate comments and noises support that the juror's ability to properly pay attention to the evidence and deliberate with the other jurors could be impeded, and his conduct could also distract and impede the other jurors in the performance of their duties.

Further, given the court's personal observation of the juror's inappropriate behavior and demeanor, the court reasonably found there was no need to further question the juror. The court could reasonably conclude that the juror would not be able to provide any explanation that would show he was fit to serve because the juror had already repeatedly demonstrated his unfitness during the trial proceedings that morning. The court also reasonably found that an additional admonishment would serve no purpose because the earlier admonishment had not stopped the inappropriate behavior.

The record manifestly supports the trial court's decision to dismiss Juror No. 1, and the court did not abuse its discretion when it declined to conduct a further inquiry.

DISPOSITION

The judgment is affirmed.


                                                                    HALLER, J.


WE CONCUR:



McCONNELL, P. J.



HUFFMAN, J.