Filed 5/20/21  P. v. Altamirez CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B301399 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA140483) |
| v. | |
| BRIAN JESSE ALTAMIREZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Olivia Rosales, Judge.  Affirmed.

Donna L. Harris, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey,

Senior Assistant Attorney General, Michael R. Johnsen, Supervising Deputy Attorney General, Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

––––––––––––––––––––––––

Defendant and appellant Brian Jesse Altamirez provided a gun to Jesus Chavez, knowing Chavez intended to kill Sialeuvea Sitani, and Chavez shot at Sitani from a car, killing him.  Altamirez appeals from a judgment following a jury trial in which he was convicted of first degree murder (Pen. Code, § 187, subd. (a)),[1] soliciting another person to dissuade a witness (§ 653f, subd. (a)), and dissuading a witness by force or threat (§ 136.1, subd. (c)(1)).  The jury found true the enhancement allegation that a principal was armed with a firearm in the commission of the murder (§ 12022, subd. (a)(1)) and the special circumstance allegation that the murder was committed by shooting a firearm from a motor vehicle with the intent to kill (§ 190.2, subd. (a)(21)).  The trial court sentenced Altamirez to state prison for life without parole for the murder, stayed the sentence for the firearm enhancement, imposed the mitigated term of 16 months for the solicitation crime, and stayed the sentence for dissuading a witness pursuant to section 654.

––––––––––––––––––––––––

[1] All further references are to the Penal Code unless otherwise indicated.

2

Altamirez contends the trial court erred by failing to instruct the jury that the special circumstance allegation required finding defendant personally had the specific intent to kill by means of a drive-by shooting. Altamirez further contends that there was insufficient evidence to support the special circumstance finding, because there was no proof that he knew Chavez intended to kill Sitani by means of a drive-by shooting, or that defendant intended to aid and abet a murder committed by means of a drive-by shooting. We affirm.

## FACTS

### *Initial Confrontation Leading to the Murder*

On October 24, 2015, a woman driving Chavez in his car confronted a man who was socializing with Sitani. Sitani jumped on the hood of Chavez's car and pounded the windshield until it broke. The other man punched out the front passenger window. The woman and Chavez drove away.

A week later, on the night of October 31, 2015, Jackie M. was driving Chavez in his car with two other women. At Chavez's request, Jackie M. parked the car in an area near the train tracks. Chavez got out of the car by himself and walked over to Altamirez and his girlfriend. Chavez and

3

Altamirez talked, shook hands, and walked out of sight for a few minutes.

Chavez returned to the car carrying a shotgun wrapped in a pair of jeans. Chavez got back in the car and put the item underneath the front passenger seat. Chavez asked one of the women if she knew where to find Sitani. He called people, asking whether they knew where to find Sitani. Jackie M. drove near a trailer park and liquor store. Spotting Sitani with a man named Michael N., Jackie M. parked the car.

Michael N. approached and spoke to one of the women. Sitani was several feet behind him. Chavez said to Sitani, "What's up, Savage?" Sitani did not approach the vehicle. He simply responded "what's up" and lifted his hands, as though to demonstrate he was unarmed. Chavez said, "Don't even trip. I told you he was going to get it." Chavez told Michael N., "Get out of the way or I will shoot you, too. It's Savage's time." Michael N. moved out of the way. Chavez pulled out a shotgun, leveled it on the window frame, and fired it at Sitani, killing him.

### Events After the Murder

Chavez told Jackie M. to drive away. Jackie M. drove away quickly, but stopped after a block and all three women got out of the car. Chavez warned them not to say anything about the incident, got into the driver's seat, and drove away.

Chavez went to Altamirez's house immediately after the shooting. Altamirez called a woman, and the three attended a party.

The next day, Altamirez asked his friend Leticia R. to hide the wrapped shotgun. Altamirez told her that "Bellflower was hot," meaning that deputies were looking for something. Leticia R. hid the shotgun in the trunk of her car. After learning Altamirez had been arrested, Leticia R. and her friend took the shotgun to another home in Los Angeles. On December 23, 2015, Leticia R.'s friend took detectives to the house and told them the gun was in a closet. The detectives found a shotgun in a closet inside the residence.

Altamirez was placed in a jail cell with a cooperating agent on November 16, 2015. Asked if there was evidence against him, Altamirez said the police had been looking for a "strap" but could not find it because he "moved that shit to a different city." Altamirez also said that he "cleaned that shit good" and did not leave any fingerprints.

Asked why Chavez "smoked that fool," Altamirez replied, "Oh well look, why he smoked this fool dog, well I could have prevented it fool by not giving him the thing, you know, but like I said, no questions asked you know."

Altamirez explained that after the initial altercation with Sitani, Chavez came to his house and "kept wanting to smoke them with me." Altamirez advised Chavez to wait at least a week to avoid suspicion. Ultimately, however, "[w]e didn't wait a week, we waited like three or two days fool."

5

Altamirez explained that on October 31, Chavez "pulled up and said, '[h]ey fool give me that shit dog, like, you know, like, I'm going to look for this fool.' I was like, 'Alright fool, you look for the dog just bring it back.' I personally did not think he was going to come back. I thought he was going to smoke him and get on or not smoke him and still look for him." The agent then clarified, "So, when he came to you, you already knew he was going to smoke that fool?" Altamirez replied, "Yeah fool, but no questions asked you know." Chavez left; when he returned later he told Altamirez, "I did it, I did it!"

The agent asked whether Altamirez regretted his involvement in the shooting. Altamirez stated, "If you think about it fool. I'm like an accessory to murder you know." Altamirez later stated, "I don't feel sorry for that fool dog, even though I could have prevented it. Naw, fool, I don't feel sorry for that fool."

## DISCUSSION

Altamirez contends that the drive-by murder special circumstance, as applied to an aider and abettor, required the jury to find that Altamirez was aware Chavez intended to kill Sitani by shooting at him from inside a car, and that Altamirez had the intent to aid, abet, or assist Chavez in committing the murder by means of a drive-by shooting. Based on this interpretation of the statutory scheme, Altamirez argues the jury was incorrectly instructed to find

6

the special circumstance allegation true based solely on Chavez's intent to commit murder by shooting from a car at Sitani. We conclude the statutory scheme governing special circumstance allegations, as it has been interpreted by the Supreme Court, does not require an aider and abettor to have intended that the murder be committed by means of a drive-by shooting, only that he had the intent to kill and the actual perpetrator committed the murder by means of a drive-by shooting. Therefore, there was no instructional error.

### A. *Standard of Review*

"'Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them their usual and ordinary meaning. [Citation.] The statute's plain meaning controls the court's interpretation unless its words are ambiguous.' [Citation.]" (*People v. Robinson* (2010) 47 Cal.4th 1104, 1138.)

"We determine whether a jury instruction correctly states the law under the independent or de novo standard of review. [Citation.] Review of the adequacy of instructions is based on whether the trial court 'fully and fairly instructed on the applicable law.' [Citation.] "In determining whether error has been committed in giving or not giving jury instructions, we must consider the instructions as a whole

7

. . . [and] assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given." [Citation.]' [Citation.] 'Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' [Citation.]" (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.)

### B. Applicable Law

The drive-by murder special circumstance set forth in subdivision (a)(21) of section 190.2 requires, "The murder was intentional and perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person or persons outside the vehicle with the intent to inflict death." (§ 190.2, subd. (a)(21).)

To apply a special circumstance to an aider and abettor, it must be proved that the person had the intent to kill as follows: "Every person, not the actual killer, who, with the intent to kill, aids, abets, counsels, commands, induces, solicits, requests, or assists any actor in the commission of murder in the first degree shall be punished by death or imprisonment in the state prison for life without the possibility of parole if one or more of the special circumstances enumerated in subdivision (a) has been found to be true under Section 190.4." (§ 190.2, subd. (c).)

## C. *Relevant Jury Instructions*

The trial court introduced the special circumstance allegation by instructing the jury pursuant to CALJIC No. 8.80.1 as follows in pertinent part: "If you find a defendant in this case guilty of murder of the first degree, you must then determine if the following special circumstance is true or not true: that the murder was perpetuated by means of discharge of a firearm from a motor vehicle at a person outside the vehicle. [¶] . . . [¶] If you find that defendant, Brian Altamirez[,] was not the actual killer of a human being[,] you cannot find the special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted, counseled, commanded, induced, solicited, requested, or assisted Jesus Chavez in the commission of the murder in the first degree[.] [¶] You must decide separately as to each of the defendants the existence or nonexistence of each special circumstance alleged in this case."

The trial court instructed the jury on the elements of the drive-by murder special circumstance pursuant to CALJIC No. 8.81.21 as follows: "To find that the special circumstance referred to in these instructions as murder by means of an intentional discharge of a firearm from a motor vehicle is true, it must be proved: [¶] 1. The murder was perpetrated by means of discharging a firearm from a motor vehicle; [¶] 2. The perpetrator intentionally discharged the firearm at another person or persons outside the vehicle; and

9

[¶] 3.  The perpetrator, at the time he discharged the firearm, specifically intended to inflict death."

### D.  Analysis

Altamirez does not dispute that the drive-by murder special circumstance applies to an aider and abettor, and the jury instructions that were given required finding Altamirez shared the specific intent to kill Sitani.  But he contends that the statutory scheme additionally requires an aider and abettor to share the perpetrator's intent to commit the murder by means of discharging a firearm from a motor vehicle, intentionally at another person outside the vehicle, with the intent to inflict death.  We are unaware of any authority expressly on point, but the California Supreme Court has construed the relevant statutory scheme in a closely analogous context in a manner that precludes the argument Altamirez makes.

We begin with the statutory scheme.  Section 190.2, subdivision (c), expressly provides:  "Every person, not the actual killer, who, *with the intent to kill*, aids, abets, . . . or assists any actor in the commission of murder in the first degree shall be punished by death or imprisonment in the state prison for life without the possibility of parole if one or more of the special circumstances enumerated in subdivision (a) has been found to be true under Section 190.4."  (Italics added.)  The drive-by murder special circumstance states:  "The murder was intentional and perpetrated by means of

discharging a firearm from a motor vehicle, intentionally at another person or persons outside the vehicle *with the intent to inflict death*." (§ 190.2, subd. (a)(21), italics added.)

Under the plain language of the statutes, section 190.2, subdivision (c), applies to any person who, with the intent to kill, aids and abets first degree murder when the murder is committed by shooting from a vehicle with the intent to inflict death. As shown by the italicized language, both the statute governing aider and abettor liability for special circumstances and the drive-by murder special circumstance provision explicitly state that the mens rea required is the intent to kill. Unlike other special circumstance provisions that include other mens rea in addition to the intent to kill, the only mens rea that the aider and abettor of a drive-by murder must share with the actual perpetrator is the intent to kill. Therefore, a person can be convicted of first-degree murder as an aider and abettor, and be liable for a special circumstance finding, so long as that person harbored the intent to kill.

In *People v. Johnson* (2016) 62 Cal.4th 600, 629–930 (*Johnson*), the California Supreme Court rejected a claim that the lying-in-wait special circumstance for an aider and abettor of murder required evidence that the aider and abettor intended the murder to be committed by means of lying in wait. The lying-in-wait special circumstance at issue in *Johnson*, like the drive-by murder special circumstance at issue here, is one of the enumerated provisions in section 190.2 that provides for enhanced

11

punishment if an intentional murder is committed by a specific means (§ 190.2, subd. (a)(15) ["defendant intentionally killed the victim by means of lying in wait"]). The *Johnson* court stated, "A lying-in-wait special circumstance can apply to a defendant who, intending that the victim would be killed, aids and abets an intentional murder committed by means of lying in wait. (§ 190.2, subds. (a)(15), (c); *People v. Bonilla* (2007) 41 Cal.4th 313, 331–332 [(*Bonilla*)] [relying on identical language in § 190.2, former subd. (b) as the statutory basis for an aider and abettor's liability].) In this factual setting, the questions are whether the defendant, with the intent to kill, aided and abetted the victim's killing, and whether the actual killer intentionally killed the victim by means of lying in wait. ([]*Bonilla, supra*, at p. 331.)" (*Johnson, supra*, at p. 630.) The *Johnson* court, in reviewing the elements necessary to apply the provision, did not conclude that the aider and abettor had to intend for the victim to be killed by means of lying in wait in order for the special circumstance to apply.

Altamirez attempts to distinguish *Johnson* by characterizing his contention as a failure to properly instruct the jury, whereas the defendant in *Johnson* challenged the sufficiency of the evidence. This distinction does not undermine the application of *Johnson* here: the *Johnson* court necessarily determined the elements of the charged crime in order to evaluate the sufficiency of the evidence presented to establish those elements. The *Johnson* court did not find an aider and abettor's intent that the murder be

12

carried out by a specific means (there, lying in wait) was an element of the crime. It follows that if the statutory scheme does not require the aider and abettor to intend that the murder be carried out by a specific means, there is no error in a jury instruction that does not require the jury to find such intent.

The drive-by murder special circumstance is also similar in this regard to the financial gain special circumstance which applies to a person who hires a hitman. In *People v. Battle* (2011) 198 Cal.App.4th 50 (*Battle*), the appellate court considered an instructional error claim related to the financial gain special circumstance. Section 190.2, subdivision (a)(1), states the financial gain special circumstance: "The murder was intentional and carried out for financial gain." The defendant contended the trial court erroneously instructed the jury that the hirer of a murderer is subject to the financial gain special circumstance even if the hirer's motive is not financial gain. The *Battle* court held, "[i]t is enough that (1) the nonkiller hired another to kill, (2) the hirer intended to kill, and (3) the actual killer was motivated by financial gain." (*Battle, supra,* at p. 84.)

Moving beyond the statutes at issue here, Altamirez notes that recent developments in the law emphasize the need for consideration of individual culpability to ensure proportionate sentencing, citing the California Supreme Court's decision in *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*). *Chiu*, however, is distinguishable. The *Chiu* court held that "an aider and abettor may not be convicted of first

degree *premeditated* murder under the natural and probable consequences doctrine." (*Id*. at pp. 158–159.) The drive-by shooting element of the special circumstance in this case addresses a different consideration than the premeditation at issue in *Chiu*. Unlike premeditation, drive-by shooting is not a mental state. The drive-by shooting element is the means by which the murder is committed. (Cf. *People v. Hyde* (1985) 166 Cal.App.3d 463, 475 [when the means of a murder are by lying in wait, the means establish the murder as equivalent to premeditated murder without additional evidence of the defendant's mental state].) The drive-by shooting element constitutes conduct. Concern about the actual killer's "subjective and personal" mental state as required for premeditated murder is not at issue with regard to the special circumstance of drive-by murder.

We acknowledge that a special circumstance true finding that subjects an aider and abettor to a sentence of life without the possibility of parole, or even death, in circumstances where that aider and abettor did not intend or even know about the conduct underlying that finding may be a harsh result. We feel compelled, however, to apply the construction given to section 190.2 by the California Supreme Court. Further, an aider and abettor under the drive-by murder special circumstance must personally harbor the intent to aid and abet in the killing. The defendant shares the same mens rea as the actual perpetrator—the intent to kill. This shared intent makes the argument less compelling for reduced culpability based

14

on a lack of interest in, or even willful ignorance of, an accomplice's planned methods.

We conclude that an aider and abettor need not have the intent to carry out the killing by drive-by shooting to be culpable for the drive-by murder special circumstance; the prosecution need only prove the aider and abettor shared the intent to kill and that the actual killer intentionally killed the victim by means of drive-by murder.  (Cf. *Johnson, supra,* 62 Cal.4th at p. 630; *Bonilla, supra,* 41 Cal.4th at p. 331.)  As a result, no instructional error has been shown. Altamirez also contends based on the same erroneous statutory analysis that there was no substantial evidence he intended Chavez to kill Sitani by means of a drive-by shooting.  As discussed above, liability for aiding and abetting the drive-by murder special circumstance did not require evidence that Altamirez intended the killing to be done by means of a drive-by shooting, and he does not contend that the evidence was otherwise not sufficient to support the jury's finding.  Therefore, this contention must be rejected as well.

## DISPOSITION

The judgment is affirmed.

MOOR, J.

We concur:

BAKER, Acting P. J.

KIM, J.