[No. A117168. First Dist., Div. One. June 9, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
CARLOS ROBERTO RAMOS, Defendant and Appellant.

COUNSEL

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, René A. Chacón and Bruce Ortega, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SWAGER, J.**—Defendant Carlos Roberto Ramos was convicted of second degree murder in the killing of his mother. He appeals his conviction, claiming that the jury instructions were inadequate because they did not expressly state that the prosecution had to prove every element of his crime beyond a reasonable doubt, and because the court rejected his special instruction regarding coercive police interrogations. We disagree and affirm the judgment.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant and his mother lived together in a two-story apartment in a building in San Francisco. Defendant's aunt lived in an apartment across the hall in the same apartment building.

On January 20, 2006, defendant's brother Eduardo Ramos came to San Francisco with his wife and daughter to visit his mother at the apartment. Eduardo had spoken with his mother the night before to tell her that he would be coming for a visit. Before he arrived in San Francisco that day, Eduardo spoke with defendant twice on the telephone. Both times, defendant told

Eduardo that he and his mother were not doing well and that it would not be a good day come to the apartment. Just before he arrived, Eduardo called defendant from his cell phone. Defendant told Eduardo that his mother did not "want to hear anything right now." Eduardo told him that he was coming to the apartment anyway because he needed to use the restroom.

Eduardo arrived at the apartment building shortly before noon and used the intercom system to call his mother's apartment so that he could be buzzed in through a gate. After the first attempt was unsuccessful, defendant called to him from a window in the apartment and activated the gate. Eduardo went upstairs to the front door of the apartment and knocked. Receiving no response, he went upstairs to a door leading to the upper level of the apartment and knocked but no one answered. He went back to the first door and tried again, unsuccessfully. Both apartment doors were locked.

Feeling uneasy, Eduardo went to see the building manager to get a key to his mother's apartment. When he could not find the manager, Eduardo tried again to access the apartment. Finally, he activated the building's fire alarm and the manager's son appeared. He retrieved a key and opened the apartment door for Eduardo. When he entered the apartment, Eduardo saw blood on the floor and his mother's body wrapped in a blanket. Believing that his mother was dead, and fearful that defendant might try to hurt him, Eduardo left and called 911 from his cell phone.

After a fire truck arrived, Eduardo led the fire officers to the apartment. He went to his mother's body and felt for a pulse, but her body was cold and rigor mortis had set in. The rescue personnel confirmed that she was dead. Subsequently, the medical examiner determined that the cause of death was due to ligature and manual strangulation. There was also evidence that defendant's mother had been hit with an object. A pair of nunchakus was found in defendant's bedroom.

Officer Ortiz responded to the scene. He encountered Eduardo, who told him that his mother was dead in the apartment and that his brother had killed her. After other police officers arrived, they searched the apartment for defendant, but he was not there. The officers also went up a stairwell to the roof of the building but could not locate defendant.

Later that afternoon, Officer Frazer was stationed on the fourth floor of the apartment building. The door at the far end of the hallway opened, and defendant entered and said: "I did something terrible, and now I want to die."

The officer placed him in handcuffs. He was transported by patrol car to the police station to be interviewed. Along the way he made statements concerning a toaster being thrown into the bathtub. He was crying on and off, and stated that his mother was his world and now he had ruined everything.

At approximately 6:00 p.m., defendant was interviewed by three officers. At the outset of the interview, the officers read him his *Miranda*[1] rights. One of the officers asked him if he wanted to tell them what happened at his apartment earlier that day. He responded that he did not want to go into the details. He then stated: "I did it, I did that to my mom, I can't believe it." He further stated that he had gotten into a fight with his mother. He said that he had been having problems with drugs for the past two years and that he had ingested about a gram of cocaine between 7:00 p.m. and 2:00 a.m. that night. He went into his mother's room at about 4:00 a.m. and woke her up. He felt "charged" by the drugs and "kind of started like to go for her throat." She got up and waved her arms to protect herself. He then took her to his room and showed her the paraphernalia that he had used to ingest the cocaine.

Defendant stated that his mother told him she was going downstairs to get him some water. Afraid that she was actually going to leave the apartment and go to his aunt's apartment to call the police, he ran after her, threw her down, hit her with his nunchakus, and used them to choke her. After she was dead, he went onto the roof and thought about jumping off. Later that morning he attempted to commit suicide by entering a bathtub filled with water, plugging in a toaster, and dropping it in the water. He also tried to hang himself with a belt. After his brother arrived, he hid on the roof until he turned himself over to Officer Frazer.

Defendant's strategy at trial was not to claim that he did not kill his mother. Rather, his strategy was that the killing amounted to involuntary manslaughter only, because mental illness and the cocaine in his system prevented him from forming the state of mind necessary to commit the killing with malice.

On March 1, 2007, defendant was convicted of second degree murder (Pen. Code, § 187) and the jury found true the allegation that he had used a deadly weapon (nunchakus). (Pen. Code, § 12022, subd. (b)(1).) The court sentenced him to 16 years to life: 15 years for the murder and one year for the enhancement. This appeal followed.

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602].

## DISCUSSION

### I. *CALCRIM No. 220*

Defendant urges that the trial court erred when it failed to instruct the jury that it must find *every element* of the charged offense or special allegation true beyond a reasonable doubt. Specifically, he claims reversal is required because the instruction given (CALCRIM No. 220) omitted the "each element" language. The People preliminarily argue that defendant has forfeited his claim of instructional error by failing to object at trial.

Generally, a party may not complain on appeal about a given instruction that was correct in law and responsive to the evidence unless the party made an appropriate objection. (*People v. Hudson* (2006) 38 Cal.4th 1002, 1011–1012 [44 Cal.Rptr.3d 632, 136 P.3d 168].) But we may review any instruction which affects the defendant's "substantial rights," with or without a trial objection. (Pen. Code, § 1259.) "Ascertaining whether claimed instructional error affected the substantial rights of the defendant necessarily requires an examination of the merits of the claim—at least to the extent of ascertaining whether the asserted error would result in prejudice if error it was." (*People v. Andersen* (1994) 26 Cal.App.4th 1241, 1249 [32 Cal.Rptr.2d 442].) In any event, defendant's position is that the challenged instruction, as given, was not correct in law. Thus, defendant did not have to raise his argument at trial. We therefore review defendant's claim on the merits.

The trial court here instructed the jury in accordance with CALCRIM No. 220[2] (as revised in Aug. 2006) that the defendant is presumed innocent unless the People prove him "guilty beyond a reasonable doubt." The instruction defined "[p]roof beyond a reasonable doubt" as "proof that leaves you with an abiding conviction that the charge is true." The jury was told that

---

[2] The trial court read CALCRIM No. 220 as follows: "The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be biased against the defendant just because he has been arrested, charged with a crime, or brought to trial. [¶] A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt. [¶] Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt, because everything in life is open to some possible or imaginary doubt. [¶] In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal, and you must find him not guilty."

to decide whether the People had proved their case beyond a reasonable doubt it must "impartially compare and consider all the evidence that was received throughout the entire trial."

We observe that the California Supreme Court and the Courts of Appeal in every appellate district have rejected challenges to the language used in CALCRIM No. 220. (*People v. Campos* (2007) 156 Cal.App.4th 1228, 1239 [67 Cal.Rptr.3d 904], and cases cited therein.) These cases concluded that the contents of the reasonable doubt instruction did not violate due process or lessen the burden of proof below that of finding guilt beyond a reasonable doubt. (See, e.g., *People v. Flores* (2007) 153 Cal.App.4th 1088, 1092–1093 [63 Cal.Rptr.3d 694]; *People v. Westbrooks* (2007) 151 Cal.App.4th 1500, 1509–1510 [61 Cal.Rptr.3d 138]; *People v. Hernández Ríos* (2007) 151 Cal.App.4th 1154, 1156–1157 [60 Cal.Rptr.3d 591].) However, the challenge that defendant raises was not addressed in the foregoing cases, as the prior version of CALCRIM No. 220 did contain the language that defendant claims the court here erroneously omitted.[3]

■ We determine whether a jury instruction correctly states the law under the independent or de novo standard of review. (*People v. Posey* (2004) 32 Cal.4th 193, 218 [8 Cal.Rptr.3d 551, 82 P.3d 755].) Review of the adequacy of instructions is based on whether the trial court "fully and fairly instructed on the applicable law." (*People v. Partlow* (1978) 84 Cal.App.3d 540, 558 [148 Cal.Rptr. 744].) " 'In determining whether error has been committed in giving or not giving jury instructions, we must consider the instructions as a whole . . . [and] assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given.' [Citation.]" (*People v. Yoder* (1979) 100 Cal.App.3d 333, 338 [161 Cal.Rptr. 35].) "Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation." (*People v. Laskiewicz* (1986) 176 Cal.App.3d 1254, 1258 [222 Cal.Rptr. 686].)

■ Construed in light of these principles, and in the context of the instructions as a whole, CALCRIM No. 220 adequately explains the applicable law. The instruction explicitly informed the jurors that "*Whenever* I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt." (Italics added.) In this case, the trial judge went on to

---

[3] The second line of the second paragraph of CALCRIM No. 220 formerly stated: "This presumption requires that the People prove each element of a crime [and special allegation] beyond a reasonable doubt." (CALCRIM No. 220, prior to Aug. 2006 revision.)

enumerate each of the elements of the charged crime and the special allegation, and stated that the People were obligated to prove each of those elements in order for defendant to be found guilty.[4] If we assume, as we must, that " 'the jurors [were] intelligent persons and capable of understanding *and correlating* all jury instructions . . . given . . .' [citation]" (*People v. Yoder, supra,* 100 Cal.App.3d 333, 338, italics added), then we can only conclude that the instructions, taken as a whole, adequately informed the jury that the prosecution was required to prove each element of the charged crime beyond a reasonable doubt.

In support of defendant's contention regarding the asserted inadequacy of CALCRIM No. 220, he cites several California appellate cases. None of them, however, addresses the specific issue he has raised in this case. Three of the cases cited by defendant—*People v. Vann* (1974) 12 Cal.3d 220 [115 Cal.Rptr. 352, 524 P.2d 824], *People v. Phillips* (1997) 59 Cal.App.4th 952 [69 Cal.Rptr.2d 532], and *People v. Crawford* (1997) 58 Cal.App.4th 815 [68 Cal.Rptr.2d 546]—reversed criminal convictions based on the trial court's failure to instruct the jury at the conclusion of the trial regarding the presumption of innocence, and its omission from the posttrial jury instructions of any instruction defining reasonable doubt. (Accord, *People v. Flores* (2007) 147 Cal.App.4th 199 [54 Cal.Rptr.3d 98].)[5] Neither of these defects is present in this case.

Defendant also cites *People v. Harris* (1994) 9 Cal.4th 407, 438 [37 Cal.Rptr.2d 200, 886 P.2d 1193], for the proposition that jury instructions must specifically require that each element of the crime be proved beyond a reasonable doubt. The point page cited, however, references Justice Mosk's separate opinion. (*Id.* at pp. 432, 438 (conc. & dis. opn. of Mosk, J.).) Moreover, the issue in *People v. Harris* was not whether the reasonable doubt instruction was adequate, but what standard of review applied in determining whether the trial court's improper definition of the " 'immediate presence' " element of the crime of robbery was reversible error. (See *id.* at pp. 411, 416–418.) Again, this issue has no bearing on the adequacy of CALCRIM No. 220.

---

[4] For example, the jurors were instructed in accordance with CALCRIM No. 520: "The defendant is charged with murder. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant committed an act that caused the death of another person; AND [¶] 2. When the defendant acted, he had a state of mind called malice aforethought; AND [¶] 3. He killed without lawful justification."

[5] There is a disagreement among the cited authorities regarding whether the total failure to instruct on reasonable doubt and the presumption of innocence constitutes structural error, and thus requires reversal regardless of any harmless error analysis. (See *People v. Flores, supra,* 147 Cal.App.4th 199, 203–211; cf. *id.* at pp. 219–223 (conc. & dis. opn. of McDonald, J.).) We need not address this question, as it is not presented under the facts of this case.

In his reply brief, defendant cites *People v. Cole* (2004) 33 Cal.4th 1158, 1208 [17 Cal.Rptr.3d 532, 95 P.3d 811] for the proposition that "The prosecution has the burden of proving beyond a reasonable doubt each element of the charged offense," and *People v. Wilson* (1967) 66 Cal.2d 749, 759 [59 Cal.Rptr. 156, 427 P.2d 820] for the proposition that a trial court "must instruct [the jury] on the general principles of law relevant to the issues raised by the evidence." We have no quarrel with either of these general statements of basic principle, but neither of these cases involved the precise question posed by this appeal.[6]

Finally, defendant cites numerous out-of-state authorities indicating that many other jurisdictions use the "each element" or "every element" language in their jury instructions on reasonable doubt. While we do not doubt that the use of such language is appropriate (see *People v. Cole, supra*, 33 Cal.4th 1158, 1208), defendant has not cited any California or United States Supreme Court authority holding that it is constitutionally required.[7]

## II. *Special Instruction Regarding Defendant's Confession*

In response to the prosecution's motion in limine, the court found that defendant had waived his *Miranda* rights with respect to the statements he made to the officers after his arrest. His interview with the homicide inspectors at the police station was videotaped and was played for the jury at trial.

Defendant requested the following special jury instruction: "If you find from the evidence that the admission or confession was made by the defendant, you must then determine if it was produced by means of coercion. Although coercion methods do not necessarily produce false confessions and admissions, they certainly may have that effect. Therefore, if you determine coercion did in fact occur, you may consider the fact in determining the

---

[6] Similarly, Evidence Code section 502, which provides, in relevant part, that the court "on all proper occasions shall instruct the jury as to which party bears the burden of proof on each issue," is merely a general statement pertaining to allocation of the burden of proof.

[7] We also note that the comparable CALJIC instruction (CALJIC No. 2.90), which for decades was the standard reasonable doubt instruction in our state, does not specify that each and every element must be proven beyond a reasonable doubt. It presently states: "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether [his] [her] guilt is satisfactorily shown, [he] [she] is entitled to a verdict of not guilty. This presumption places upon the People the burden of proving [him] [her] guilty beyond a reasonable doubt. [¶] Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge."

weight, if any, such admission or confession should be given." The court refused the instruction, finding that it went beyond what is required under *Crane v. Kentucky* (1986) 476 U.S. 683 [90 L.Ed.2d 636, 106 S.Ct. 2142] (*Crane*).

*Crane* involved a case largely built upon a 16-year-old's confession to murder. The defendant had unsuccessfully sought to introduce evidence that the confession was obtained under oppressive and coercive circumstances in order to " 'cast doubt on its credibility.' " (*Crane, supra*, 476 U.S. 683, 685.) The United States Supreme Court concluded that the "blanket exclusion" of evidence related to the circumstances of the minor's confession deprived him of " 'a meaningful opportunity to present a complete defense.' [Citation.]" (*Id.* at p. 690.)

We are presented with a different situation than that addressed in *Crane*. As defendant concedes, the trial court allowed him "to introduce considerable evidence as to how the January 20, 2006 police interview was conducted and why it was not reliable," including that he was extremely distraught, and that he was reluctant to discuss the details of what had happened to his mother in the apartment. *Crane* requires no more.

The trial court did give CALCRIM No. 358, which provides, in part: "You have heard evidence that the defendant made oral statements before the trial. You must decide whether or not the defendant made any of these statements, in whole or in part. If you decide that the defendant made such statements, consider the statements, along with all the other evidence, in reaching your verdict. It is up to you to decide how much importance to give to such statements." The court also added the following special instruction: "It is for the jury to decide whether the statements are reliable and credible, depending upon the manner in which they are obtained." These instructions adequately advised the jury to consider the circumstances surrounding defendant's confession.

We also note defendant does not challenge the court's initial finding that the admissions he made during his interview were obtained voluntarily. Our review of the transcript of the interview shows that there was no discussion by the officers of anything other than defendant cooperating and telling the truth, no undue pressure amounting to coercion, no promise of any specific

benefits he might receive or any harm that might occur if he did not confess, nor any improper implication of either, and no dishonesty and trickery amounting to false promise. (See *People v. Holloway* (2004) 33 Cal.4th 96, 114–115 [14 Cal.Rptr.3d 212, 91 P.3d 164].)

The judgment is affirmed.[8]

Marchiano, P. J., and Margulies, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 20, 2008, S164456.

---

[8] We note that the abstract of judgment only shows the municipal court number rather than the superior court number. The clerk is ordered to file an amended abstract that references the superior court No. 199626.