Filed 7/29/14  P. v. Mendez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058200 |
| v. | (Super.Ct.No. FSB1002715) |
| RUBEN LOUIS MENDEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Kyle S. Brodie, Judge.  Affirmed.

Edward J. Haggerty, under appointment by the court of appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Steve Oetting and Michael T. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted defendant Ruben Louis Mendez of three counts of oral copulation or sexual penetration of a child under 10 years of age (Pen. Code,[1] § 288.7, subd. (b); counts 1-3), 10 counts of lewd and lascivious conduct with a child under the age of 14 years (§ 288, subd. (a); counts 4-13), and one count of lewd and lascivious conduct with a child of 14 or 15 years who was more than 10 years younger than defendant (§ 288, subd. (c); count 14). The jury also found true allegations with respect to counts 4 through 13, that defendant committed those offenses against more than one victim in the present case within the meaning of section 667.61, subdivision (b). The court imposed an aggregate sentence of 195 years to life plus 8 months, including 13 consecutive indeterminate terms of 15 years to life (counts 1-13) and a consecutive determinate term of eight months (count 14).

On appeal, defendant contends: (1) CALCRIM No. 1110 violates his constitutional rights by removing an essential element of the offense of lewd and lascivious conduct from the jury's consideration; (2) CALCRIM Nos. 1110 and 1112 are "impermissibly argumentative"; (3) the modified CALCRIM No. 1191 instruction used to instruct the jury unconstitutionally implied an aspect of the case had been proven to the satisfaction of the court; (4) evidence of child sexual abuse accommodation syndrome (CSAAS) should be deemed inadmissible for all purposes; (5) the court erred by not giving a limiting instruction with respect to CSAAS evidence sua sponte; and

---

[1] All further statutory references will be to the Penal Code unless otherwise indicated.

2

(6) defendant's trial counsel was ineffective for failing to request a limiting instruction with respect to CSAAS evidence.[2]

We reject each of defendant's contentions, and affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

Defendant's two victims are most efficiently described as his stepdaughters, though he never married either of their mothers. Counts 9 through 14 were committed against victim 1, who was born in 1995, while counts 1 through 8 were committed against victim 2, who was born in 2001.

The mother of victim 1 began dating defendant in 1999, and he moved in with her in 2000. Victim 1 is her daughter from a prior relationship. Victim 1's mother had two more children with defendant during their relationship. Defendant left her for the mother of victim 2 in 2006. Soon after, defendant lost his job and began staying home as caretaker for victim 2 and her younger sister (who was eight years old at the time of the trial) while their mother worked. Eventually, the two mothers became friends, and both developed relationships with the other's children.

Victim 1 testified defendant would touch her in various ways that made her uncomfortable, including slapping her on the buttocks, holding her on his lap in such a way that she could feel his "private area," and rubbing her back with his hand under her

---

[2] Defendant has withdrawn another claim of instructional error in light of the California Supreme Court's holding in *People v. Shockley* (2013) 58 Cal.4th 400, 406 (*Shockley*), which issued after defendant's opening brief was filed in this appeal, and which forecloses defendant's argument that battery (§ 242) is a lesser included offense of lewd and lascivious conduct with a child (§ 288, subd. (a)).

3

shirt, ostensibly as part of helping her to fall asleep, but in a manner that felt "sexual" to her. She estimated defendant would touch her in a manner that made her uncomfortable every couple of weeks. She recalled first being uncomfortable with defendant's touching when she was about eight years old. The final incident occurred in 2010, when victim 1 was about 15 years old, and defendant was already living with victim 2's mother—victim 1's half siblings would visit defendant in his new home, and victim 1 would sometimes accompany them. Victim 1 stated that on this occasion, while victim 2's mother was in the shower, defendant hugged victim 1 from behind "like a girlfriend and boyfriend would hug each other," and "it felt like he was trying to hump [her]." Defendant then turned her around to face him, touching her buttocks and breasts over her clothes. Victim 1 tried to move away, and was able to do so.

Victim 2 testified she was first touched inappropriately by defendant soon after he moved in with her mother, when she was six years old. On that occasion, defendant pulled victim 2's skirt down, she lay down on her back, and he lay on top of her. He got up and apologized when she started crying, telling her they "won't play like that anymore." Nevertheless, more than once after that, defendant would lay victim 2 on her stomach, get on top of her, and rub against her in a manner she described as "humping." Victim 2 was clothed during these incidents; defendant wore boxers only, or boxers and a T-shirt. Once, victim 2 noticed a wet spot on her clothing afterwards, which had not been there before.

Victim 2 further testified that defendant would kiss her on the lips, and put his tongue inside her mouth. On two occasions, he vaginally penetrated her using his fingers. On two other occasions, he licked her vagina. On five occasions, he rubbed his penis against her vagina over her underwear, and once or twice he touched his penis to her vagina "skin to skin," though he did not penetrate all the way inside her.

Victim 1 first told her mother defendant was touching her inappropriately when she was about 11 years old, but her mother did not believe her. She told her mother again in June 2010, about two months after the groping incident at the home of victim 2's mother; she had told her boyfriend at the time what had happened, and he became angry and said that if she did not say something, he would "deal with it [him]self." She was also concerned about the increasing intrusiveness of defendant's touching: unless she told her mother, she worried he would "[p]robably go underneath my clothes and touch me more." This time, her mother believed her.

There was conflicting testimony as to how defendant's abuse of victim 2 came to light. Victim 2's mother testified that, after she and victim 1's mother returned from confronting defendant together about his abuse of victim 1, victim 1 told her defendant had also molested victim 2. Victim 1's younger half brother—who is close in age but slightly older than victim 2—had a different account. He testified that in June 2010, when he was 10 years old, his mother (who is also victim 1's mother) had told him defendant (his father) had molested victim 1, and that had become the topic of discussion when he, victim 2, and a friend were playing video games at the friend's house. Victim 2 then revealed that she too had been molested by defendant. At that point, the children

5

stopped playing video games and returned to victim 2's house, where the friend told victim 2's mother.  Victim 2's testimony is largely consistent with victim 1's half brother's account, though victim 2 denied that they had been talking about victim 1's abuse.  In any case, it is undisputed that in June 2010, defendant's abuse of both victims became known to both mothers, who involved the police shortly thereafter, on the evening of June 17, 2010.

In addition to the two mothers, the two victims, victim 1's half brother, several police officers involved in the investigation, and a forensic pediatrician who examined victim 2, were called to testify for the prosecution at trial.  Defendant testified in his own defense.[3]

On November 20, 2012, the jury returned its verdicts.  The trial court imposed sentence on January 11, 2013.

## II.  DISCUSSION

### A.  Standard of Review for Claims of Instructional Error

"We determine whether a jury instruction correctly states the law under the independent or de novo standard of review.  [Citation.]  Review of the adequacy of instructions is based on whether the trial court 'fully and fairly instructed on the applicable law.'  [Citation.]  '"In determining whether error has been committed in giving or not giving jury instructions, we must consider the instructions as a whole . . . [and] assume that the jurors are intelligent persons and capable of understanding and

---

[3]  Additional facts are set forth as necessary in the discussion of the issues to which they pertain.

correlating all jury instructions which are given." [Citation.]' [Citation.] 'Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' [Citation.]" (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088 (*Ramos*).)

## B. Analysis

### 1. CALCRIM No. 1110 Is Not Unconstitutional.

The jury was instructed on the elements of the offense of lewd and lascivious conduct on a child under 14 (§ 288, subd. (a)) using former CALCRIM No. 1110.[4] Defendant argues the portion of the instruction stating that the touching "need not be done in a lewd or sexual manner" contradicts the element of the offense that requires the defendant "lewdly" commit the lewd or lascivious act. On this basis, defendant contends

---

[4] The version of the instruction given to the jury in this case was as follows:

"The defendant is charged in Counts 4-13 with committing a lewd or lascivious act on a child under the age of 14 years in violation of Penal Code section 288(a).

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant willfully touched any part of a child's body either on the bare skin or through the clothing;

"2. The defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child;

"AND

"3. The child was under the age of 14 years at the time of the act.

"The touching need not be done in a lewd or sexual manner.

"Someone commits an act *willfully* when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage.

"Actually arousing, appealing to, or gratifying the lust, passions, or sexual desires of the perpetrator or child is not required for lewd or lascivious conduct.

"It is not a defense that the child may have consented to the act."

7

the instruction is "constitutionally flawed," because it removes an essential element of the offense from the jury's consideration, or at least was confusing. We find no error.

The jury was instructed that to satisfy the elements of the lewd and lascivious conduct offense, the touching "need not be done in a lewd or sexual manner." Defendant argues this language contradicts section 288, subd. (a), which requires that the defendant "willfully and lewdly" commit the lewd or lascivious act. (See § 288, subd. (a) ["Any person who *willfully and lewdly commits any lewd or lascivious act . . . .*" (Italics added.)].) Not so. The language of the instruction conforms with section 288, subdivision (a), as it has been interpreted by the California Supreme Court. Most recently, in *Shockley*, *supra*, 58 Cal.4th at p. 400, the Court reiterated that "'*[a]ny* touching of a child under the age of 14 violates this section [(§ 288, subd. (a))], even if the touching is outwardly innocuous and inoffensive, if it is accompanied by the *intent* to arouse or gratify the sexual desires of either the perpetrator or the victim.' [Citation.]" (*Id.* at p. 404.) The challenged language in the instruction reflects an earlier articulation of the same principle: "[T]hroughout the statute's history, the cases have made clear that a 'touching' of the victim is required, and that sexual gratification must be presently intended at the time such 'touching' occurs. [Citations.] However, the form, *manner*, or nature of the offending act is not otherwise restricted." (*People v. Martinez* (1995) 11 Cal.4th 434, 444 (italics added).) Thus, the challenged language in the instruction is an accurate statement of the law.

Defendant acknowledges in his briefing that *People v. Sigala* (2011) 191 Cal.App.4th 695 (*Sigala*) rejected an argument similar to the one he makes here, but argues *Sigala* was wrongly decided. We disagree. In *Sigala*, the court considered a challenge to identical language in CALCRIM 1120, the standard instruction for section 288.5 (continuous sexual abuse), which may be violated by committing three or more violations of section 288, subd. (a).[5] (*Sigala*, *supra*, at p. 699.) The *Sigala* court found the phrase at issue to be an accurate statement of the law, as we do above. (*Id.* at p. 701.) Nevertheless, defendant argues that *Sigala* was wrongly decided because it relies on Supreme Court precedent—specifically, *People v. Lopez* (1998) 19 Cal.4th 282 (*Lopez*), and *People v. Martinez* (1995) 11 Cal.4th 434 (*Martinez*)—discussing not CALCRIM instructions, but rather predecessor CALJIC instructions containing different language. We reject the notion that reliance on *Lopez* and *Martinez* was inappropriate. The propositions for which *Sigala* cites to *Lopez* and *Martinez* are those recently reaffirmed in *Shockley*, namely, interpretations of section 288 that would apply to any instruction regarding the same offense. (See *Shockley*, *supra*, 58 Cal.4th at p. 404; *Sigala*, *supra*, at pp. 698-699.) *Sigala* was not wrongly decided.

Nor does the Second District Court of Appeal's decision in *People v. Cuellar* (2012) 208 Cal.App.4th 1067 (*Cuellar*) addressing the same argument, require a different result. *Cuellar* found the same challenged language in CALCRIM No. 1120 to be

---

[5] *Sigala* explicitly notes that its reasoning applies equally to the identical definition of lewd or lascivious conduct in CALCRIM 1110. (*Sigala*, *supra*, 191 Cal.App.4th at p. 701, fn. 5.)

"unfortunate and possibly confusing," agreeing with the defendant that, "[t]aken by itself, that sentence is capable of the construction defendant suggests." (*Cuellar*, *supra*, at pp. 1071-1072.) But the *Cuellar* court did not conclude that it was error to have given the instruction. (*Ibid.*)

Moreover, a jury instruction, or portion thereof, is not reviewed "by itself," but rather in the context of the instructions as a whole. (*Ramos*, *supra*, 163 Cal.App.4th at p. 1088.) Here, the instructions as a whole properly explained, consistent with the long line of cases reaffirmed in *Shockley*, that the prosecution bore the burden of proving, inter alia, defendant "willfully touched any part of a child's body" and the touching was done with the requisite intent "of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child." (See *Shockley*, *supra*, 58 Cal.4th at p. 404.) Any possible ambiguity in the instruction's language, when that language is examined in isolation, is resolved when that language is viewed in the context of the remainder of the instructions, and the other instructions given to the jury.[6]

In short, the version of CALCRIM No. 1110 used to instruct the jury was not constitutionally infirm, but rather accurately instructed on the elements of the offense, and appropriately placed the burden of proving those elements on the prosecution.

---

[6] The *Cuellar* court's point that the challenged language does not add much in the way of useful information not already stated or implicit in the bare elements of the offense is well taken. (See *Cuellar*, *supra*, 208 Cal.App.4th at p. 1071.) Indeed, apparently in response to *Cuellar*, the Judicial Council of California has since amended CALCRIM No. 1110 to omit the challenged sentence. (See CALCRIM No. 1110 (Feb. 2013 rev.).) Nevertheless, the instruction as given by the trial court, based on former CALCRIM No. 1110, was not erroneous.

10

Additionally, we note that defendant did not object to the giving of this instruction in the trial court, nor did he request any clarifying instruction. As such, the issue of whether the potential ambiguity identified in *Cuellar* should have been ameliorated by an additional clarifying instruction was forfeited.[7] (*People v. Kelly* (1992) 1 Cal.4th 495, 535 [trial court has no sua sponte duty to revise or improve accepted and correct jury instructions].)

## 2. CALCRIM Nos. 1110 and 1112 Are Not Impermissibly Argumentative.

Defendant contends that certain language in the versions of CALCRIM Nos. 1110 (lewd act on a child under age 14) and 1112 (lewd act on a child 14 or 15 years of age) given to the jury is impermissibly argumentative.[8] Specifically, defendant objects to the following sentence, which appears in both instructions: "Actually arousing, appealing to, or gratifying the lust, passions, or sexual desires of the perpetrator or the child is not required." He argues that this language is biased in favor of the prosecution, duplicative, and improperly suggests to the jury that evidence of the lack of actual arousal should be given no weight at all. These arguments are without merit.

---

[7] In light of our conclusion finding no error, we need not and do not consider the parties' arguments regarding prejudice from any error.

[8] CALCRIM No. 1112 is substantially similar to CALCRIM No. 1110, except with respect to the age of the child, and an additional element that the child must have been at least 10 years younger than the defendant at the time of the act. Also, the version of CALCRIM No. 1112 given in this case omitted the phrase "The touching need not be done in a lewd or sexual manner," discussed above, though it was a part of the standard instruction at the time of trial. (See CALCRIM No. 1112 (Aug. 2012 rev.).) Indeed, that phrase still is included in CALCRIM No. 1112: for reasons unknown, the Judicial Council of California did not also revise CALCRIM No. 1112 when it revised CALCRIM No. 1110 in response to *Cuellar*. (CALCRIM No. 1112.)

11

An argumentative instruction is one that invites the jury to draw inferences favorable to the prosecution from specified items of evidence. (*People v. Wright* (1988) 45 Cal.3d 1126, 1135.) Neither instruction at issue does so. No specific items of evidence are discussed; rather, the challenged language clarifies the elements the jury needs to find to convict. Defendant's authority—which deals with judicial comments to the jury about the evidence, not instructions clarifying the elements of the offense—is inapposite.

We disagree with defendant's assertions, unsupported by authority, that the "tone" of the instructions suggests the prosecution's burden of proof is any lower than it actually is, or that clarifying language regarding what need not be proven "distracts the jury from the elements the prosecution is required to establish." The tone of the challenged instructions is neutral, and suggests nothing inconsistent with the explanations of the burden of proof elsewhere in the instructions. And our presumption that the jurors understood the instructions and applied them to the facts of the case is not rebutted by defendant's speculation regarding possible distraction. (See *Ramos*, *supra*, 163 Cal.App.4th at p. 1088.)

Moreover, the challenged language is a correct statement of the law. Actual sexual arousal is *not* an element of the offense. (*People v. McCurdy* (1923) 60 Cal.App.499, 502-503.) The instructions properly inform the jury that it could convict defendant only if it found he acted with the intent of "arousing, appealing to, or gratifying the lust, passions, or sexual desires of [himself] or the child." But, defendant's assertions to the contrary notwithstanding, nothing in the instructions forbids the jury from

12

considering lack of actual sexual arousal as circumstantial evidence of a lack of culpable intent, or otherwise "diminishes" the weight of such evidence. Again, we presume that the jurors understood the instructions and applied them to the facts of the case, giving the evidence presented at trial the weight they felt it deserved. (See *Ramos*, *supra*, 163 Cal.App.4th at p. 1088.)

Finally, the challenged language is not duplicative of any other language in either instruction. Duplicative language would provide the jury with the same information previously given. The language at issue does not do so. Defendant asserts—without any supporting reasoning, let alone legal authority—that when a "jury has already been instructed on what must be proved, further instruction on what need not be proved is duplicative." This assertion is overbroad, at best. Nothing in the law or logic necessarily prohibits instructions on elements of an offense being clarified by specification of what need not be proved. Indeed, such clarification may well be helpful to the jury in understanding legal concepts that otherwise could be confusing to nonlawyers. Thus, distinguishing the defendant's *intent* of arousing or gratifying either himself or the child from actually *achieving* arousal or gratification is appropriate to assist the jurors in understanding what is meant by the intent element of the offense.

We find no error with respect to the challenged language in the versions of CALCRIM Nos. 1110 and 1112 used by the trial court.[9]

---

[9] Again, in light of this conclusion finding no error, we decline to address the parties' arguments regarding prejudice from any error.

**3. The Modified CALCRIM No. 1191 Did Not Interfere with Defendant's**

**Presumption of Innocence.**

The standard pattern instruction CALCRIM No. 1191 addresses the use of

*uncharged* sex offenses as evidence the defendant was likely to have committed the

charged offenses. (See CALCRIM No. 1191.) Following *People v. Villatoro* (2012) 54

Cal.4th 1152 (*Villatoro*), the trial court modified this instruction to allow other *charged*

offenses to be used as propensity evidence. The modified instruction begins: "The

People presented evidence that the defendant committed the crimes of lewd act on a

minor and oral copulation on a minor, as charged in this case."[10] Defendant contends

this phrase conveyed the impression the court believed the evidence, effectively reducing

---

[10] The entire modified instruction (CALCRIM No. 1191), as read to the jury, is as follows:

"The People presented evidence that the defendant committed the crimes of lewd act on a minor and oral copulation on a minor, as charged in this case. These crimes are defined for you in these instructions.

"If you decide that the defendant committed any of the charged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit lewd act on a minor and oral copulation on a minor, as charged here. If you conclude that the defendant committed the charged offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of other charges of lewd act on a minor and oral copulation on a minor. The People must still prove each charge and allegation beyond a reasonable doubt.

"You may consider this evidence only if the People have proved beyond a reasonable doubt that the defendant in fact committed the charged offenses. If the People have not met this burden of proof, you must disregard this evidence entirely."

We note that the charged crimes for counts 1 through 3 were actually oral copulation *or sexual penetration* of a child. This mistake was corrected in the instruction regarding the offense itself, but not the modified CALCRIM No. 1191 regarding propensity evidence. Nevertheless, the mistake is not relevant to defendant's claim of error on appeal regarding this instruction.

14

the prosecution's burden of proof by raising an inference that the prosecution had proved its case. We disagree.

In *Villatoro*, the California Supreme Court considered the propriety of a similarly modified version of CALCRIM No. 1191. (*Villatoro*, *supra*, 54 Cal.4th at p. 1167.) The instruction at issue in *Villatoro* began with language virtually identical to that of the instruction at issue in this case: "'The People presented evidence that the defendant committed the crime of rape as alleged in counts 2, 4, 7, 9, 12 and 15 and the crime of sodomy as alleged in count 14. . . .'" (*Ibid.*) The Court noted that the remainder of the instruction "clearly told the jury that all offenses must be proven beyond a reasonable doubt, even those used to draw an inference of propensity," and reasoned on that basis that "there was no risk the jury would apply an impermissibly low standard of proof." (*Id.* at p. 1168.) The Court also noted that the jury was instructed using CALCRIM No. 220, defining the reasonable doubt standard and reiterating that the defendant is presumed innocent. (*Villatoro*, *supra*, at p. 1168.) On this basis, the Court concluded the modified instruction "did not impermissibly lower the standard of proof or otherwise interfere with the defendant's presumption of innocence." (*Ibid.*)

There is no relevant distinction between *Villatoro* and this case on the facts. As in *Villatoro*, the remainder of the instruction given here specifically instructed, repeatedly, that all charged offenses must be proven beyond a reasonable doubt: "The People must still prove each charge and allegation beyond a reasonable doubt. [¶] You may consider this evidence only if the People have proved beyond a reasonable doubt that the defendant in fact committed the charged offenses." And the jurors were additionally

15

instructed on the reasonable doubt standard using CALCRIM No. 220. Thus, the same reasoning that led the California Supreme Court to conclude that the modified instruction at issue in *Villatoro* did not impermissibly lower the standard of proof or otherwise interfere with the defendant's presumption of innocence applies equally to the modified instruction at issue here.

Defendant attempts to distinguish *Villatoro* on the basis that in *Villatoro*, "the issue was the application of the propensity instruction to charged offenses *in addition to uncharged bad acts*." (Italics added.) This is simply inaccurate. In *Villatoro*, as here, the modified version of CALCRIM No. 1191 at issue "permitted the jury to use evidence of defendant's guilt of one of the charged sexual offenses as evidence of his propensity to commit the other charged sexual offenses." (*Villatoro*, *supra*, 54 Cal.4th at p. 1158; see *id.* at p. 1167 [text of instruction].) Defendant also contends that the focus of the challenge in *Villatoro* "was not to the initial sentence of the instruction," as it is here. But this is a distinction without a difference. The bottom line is that the Supreme Court considered and approved an instruction with wording that is identical in all relevant respects to the one at issue here, on the basis of reasoning that applies equally well here.

Defendant relies heavily on *People v. Owens* (1994) 27 Cal.App.4th 1155, 1158-1159 (*Owens*). The instruction at issue in *Owens*, however—unlike the instruction in *Villatoro*—is different from the one at issue here. In *Owens*, the Court of Appeal found erroneous an instruction based on former CALJIC No. 10.42.6, which stated in part: "'The People have introduced evidence *tending to prove* that there are more than three acts of substantial sexual conduct or lewd and lascivious conduct upon which a

16

conviction [for continuous sexual abuse of a child, in violation of section 288.5] may be based.'" (*Owens*, *supra*, at p. 1158, italics added.)  The *Owens* court concluded that the phrase "'tending to prove' conveyed the impression that the court believed the evidence showed that more than three acts were committed, relieving the prosecution of its burden of proof beyond a reasonable doubt." (*Ibid.*)  But no such language appears in the instruction at issue in this case.

Furthermore, the *Owens* court found the error harmless, in light of the entire body of instructions.  (*Owens*, *supra*, 27 Cal.App.4th at p. 1159.)  We would reach the same conclusion here, if we found any error.  We disagree with defendant's contention that the first sentence of the instruction at issue here is "even more inappropriate than the instruction in *Owens*," because its first sentence "strongly implied that the trial court had determined that the prosecution had proved the elements of the charged offenses."  In the context of the remainder of the instruction—emphasizing that the charged offenses must be proven beyond a reasonable doubt, and that the permissive inference allowed by the instruction only applied "[i]f you decide that the defendant committed any of the charged offenses . . ."—the most natural reading of the first sentence of the instruction is to make the obvious point that the prosecution presented evidence *in support of* or *for the purpose of showing* defendant committed the crimes at issue.  Additionally, as noted, the jury was separately instructed on the reasonable doubt standard using CALCRIM No. 220.  And the jury was specifically cautioned against reading into the instructions any opinion of the court regarding the facts: "Do not assume just because I give a particular instruction that I am suggesting anything about the facts.  After you have decided what the facts are,

17

follow the instructions that do apply to the facts as you find them." Thus, there is no reasonable possibility that the jury was misled in the manner defendant suggests, so to the extent there was any error, it was harmless, on any standard of review. (See *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*); *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).)

In *Villatoro*, the California Supreme Court explicitly refrained from deciding "whether courts should give such an instruction in the future," as do we. (See *Villatoro*, *supra*, 54 Cal.4th at p. 1169). Nevertheless, we are persuaded, for the same reasons as expressed in *Villatoro*, that it was not error for the trial court to give the modified version of CALCRIM No. 1191 under the facts of this case. (See *Villatoro*, *supra*, at p. 1169.) To the extent the instruction could have been worded more artfully to avoid any possible ambiguity, any error was harmless.

**4. Testimony Regarding Reasons for Delayed Reporting of Abuse Was Properly Admitted.**

Defendant objects to the admission of expert testimony regarding the victims' delayed reporting of their abuse. He characterizes this evidence using the term "child sexual abuse accommodation syndrome" (CSAAS), although this term was not used at trial by any party or witness. As a general matter, expert testimony concerning CSAAS is used to describe and explain how children commonly react to sexual molestation. (See *People v. Bowker* (1988) 203 Cal.App.3d 385, 394 (*Bowker*).) Common stress reactions of children who have been sexually molested "may include the child's failure to report, or delay in reporting, the abuse." (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300

18

(*McAlpin*).) "[E]xpert testimony on the common reactions of child molestation victims is not admissible to prove that the complaining witness has in fact been sexually abused; it is admissible to rehabilitate such witness's credibility when the defendant suggests that the child's conduct after the incident—e.g., a delay in reporting—is inconsistent with his or her testimony claiming molestation." (*Ibid.*)

Though the term CSAAS was not introduced at trial, the evidence presented to the jury included some that falls within the description of permissible expert testimony on the common reactions of child molestation victims in *McAlpin*, specifically, evidence presented in rebuttal to defense suggestions that a delay in reporting is inconsistent with testimony claiming molestation. (See *McAlpin*, *supra*, 53 Cal.3d at p. 1300; see *Bowker*, *supra*, 203 Cal.App.3d at p. 392, fn. 8 ["An expert has little need to refer to the syndrome in order to testify that a particular type of behavior is not inconsistent with a child having been abused"].) On cross-examination of the victims, defense counsel repeatedly elicited testimony about delay in reporting, suggesting that the allegations of abuse were recent fabrications.[11] In response, the prosecution elicited testimony from two witnesses— Dr. Amy Young-Snodgrass, a forensic pediatrician who examined victim 2, and Detective Chris Gray, one of the investigating police officers—about delayed reporting. Dr. Young-Snodgrass testified children commonly delay disclosure of sexual abuse, and offered her understanding of the many reasons why. Detective Gray confirmed that in his

---

[11] In closing, the defense made the suggestion explicit, arguing that the delay in reporting indicated the allegations were recently fabricated.

experience, too, children commonly delay reporting sexual abuse. Defense counsel raised no objection to the testimony of Dr. Young-Snodgrass or Detective Gray.

Despite having failed to object to the admission of CSAAS evidence at trial, defendant argues at length that it should be inadmissible for all purposes. He acknowledges, however, that this argument is contrary to existing California precedent. This existing California precedent includes authority from the California Supreme Court, which we are obliged under the doctrine of stare decisis to follow. (See *Auto Equity Sales, Inc. .v Superior Court* (1962) 57 Cal.2d 450, 455; see also *McAlpin*, *supra*, 53 Cal.3d at p. 1300 [discussing with approval rules developed in court of appeal decisions regarding admissibility of CSAAS evidence, and collecting cases].) As such, even if we were to conclude defendant did not forfeit the argument by failing to raise it in the trial court (see *People v. Larson* (2011) 194 Cal.App.4th 832, 836 ["Normally, the failure to object [to the admission of evidence] forecloses consideration of the issue on appeal"]), we would be obliged to reject it.

Further, while defendant cites a Ninth Circuit opinion for the proposition that CSAAS evidence has been "found wanting," and draws our attention to several out-of-state cases ruling CSAAS evidence inadmissible, he has not produced any authority for the proposition that CSAAS evidence is no longer accepted in the scientific community, or that California courts, including the Supreme Court, are prepared to reconsider their opinions accepting such evidence. Accordingly, we find no error with respect to the admission of the testimony of Dr. Young-Snodgrass and Detective Gray regarding delayed reporting of abuse.

20

**5. The Trial Court Did Not Prejudicially Err by Failing to Give a Limiting Instruction Re CSAAS Evidence Sua Sponte.**

Defendant contends the trial court erred by failing to instruct the jury, on its own motion, regarding the limited purposes for which it was appropriate to consider testimony on delayed reporting of child abuse. He proposes that a modified version of CALCRIM No. 1193 would have been appropriate.[12] We conclude that if the court had such a duty, the error was harmless.

Generally, absent a request by the defendant, a trial court has no sua sponte duty to give a limiting instruction. (*People v. Smith* (2007) 40 Cal.4th 483, 516.) Evidence Code section 355 provides: "When evidence is admissible as to one party for one purpose and is inadmissible as to another party or for another purpose, the court *upon request* shall restrict the evidence to its proper scope and instruct the jury accordingly." (Italics added.) Nevertheless, there are exceptions to that general rule, including the trial court's obligation to give instructions regarding the "general principles of law relevant to the

---

[12] CALCRIM NO. 1193 reads as follows:

"You have heard testimony from _____ <*insert name of expert*> regarding child sexual abuse accommodation syndrome.

"_____'s <*insert name of expert*> testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against (him/her).

"You may consider this evidence only in deciding whether or not _____'s <*insert name of alleged victim of abuse*> conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of (his/her) testimony."

As noted, the term "child sexual abuse accommodation syndrome" was not introduced in evidence in this case, so defendant proposes an instruction substituting in the term "delayed disclosure."

21

issues raised by the evidence" (*People v. St. Martin* (1970) 1 Cal.3d 524, 531), and the requirement to instruct the jury on the weight to be given expert testimony (Pen. Code, § 1127b).  We independently determine whether the trial court had a duty to give a particular jury instruction.  (*People v. Guiuan* (1998) 18 Cal.4th 558, 569.)

There is a split of authority in California as to whether there is a sua sponte duty to instruct the jury that CSAAS testimony may not be used as evidence that the victim's claim of molestation is true.  (See *People v. Stark* (1989) 213 Cal.App.3d 107, 116 [instruction required "if requested"]; *People v. Sanchez* (1989) 208 Cal.App.3d 721, 735 [same]; *People v. Bothuel* (1988) 205 Cal.App.3d 581, 588, overruled on other grounds by *People v. Scott* (1994) 9 Cal.4th 331, 348 [same]; but see *People v. Housley* (1992) 6 Cal.App.4th 947, 957 (*Housley*) [sua sponte instruction required].)  We note that since *Housley* was decided, no other published decision has followed its conclusion that the court must give a limiting instruction regarding CSAAS testimony sua sponte.  Moreover, in the same time period, the California Supreme Court has consistently reiterated its prior holdings that cautionary instructions must be requested, except in the ""occasional extraordinary case"' in which the evidence at issue '"is a dominant part of the evidence against the accused, and is both highly prejudicial and minimally relevant to any legitimate purpose."'  [Citations.]" (*People v. Cowan* (2010) 50 Cal.4th 401, 479 (*Cowan*).)

Nevertheless, we need not decide whether *Housley* is correctly decided. Even assuming, for purposes of discussion only, that it was error for the trial court to fail to give such a limiting instruction sua sponte, defendant's convictions may not be reversed unless he can demonstrate prejudice. (*People v. Bunyard* (1988) 45 Cal.3d 1189, 1224.) The standard set forth in *Watson*, *supra*, 46 Cal.2d at page 836, applies for assessing whether defendant suffered any prejudice.[13] (*Housley*, *supra*, 6 Cal.App.4th at p. 959; *Bowker*, *supra*, 203 Cal.App.3d at p. 395.) Thus, we examine whether it is reasonably probable that a result more favorable to defendant would have been reached had the instruction been given. (*Watson*, *supra*, at p. 836.)

We find no reasonable probability that the result at trial would have been any different had the jury been specifically instructed regarding the appropriate uses of CSAAS evidence. First, the evidence at issue was limited in scope. It was not a """"dominant part of the evidence against the accused,"""" but rather brief rebuttal evidence. (See *Cowan*, *supra*, 50 Cal.4th at p. 479.) Both witnesses who provided the testimony couched their discussion in general terms, describing the behaviors of molestation victims as a class. The jury was aware that Dr. Young-Snodgrass had

---

[13] Defendant argues that his federal constitutional rights are implicated, so any error should be assessed under the stricter standard described in *Chapman*, *supra*, 386 U.S. at p. 24. We disagree. The *Chapman* test would apply only if the lack of such an instruction constituted an error that "'so infected the entire trial that the resulting conviction violates due process.' [Citations.]" (*Estelle v. McGuire* (1991) 502 U.S. 62, 72.) Here, even if the court could be faulted for failing to instruct sua sponte regarding the limited purpose for which evidence of delayed reporting was admissible, we see no violation of fundamental fairness implicating defendant's federal constitutional rights. (*Id.* at p. 73.) In any case, however, we would reach the same conclusion regarding prejudice under either standard of review.

examined victim 2, but the examination was for physical signs of sexual abuse, not an assessment of her credibility.  Similarly, Detective Gray interviewed the victims as part of the police investigation, but was not asked to opine, and in fact offered no opinion, regarding whether her allegations were true.  Defendant's assertion to the contrary notwithstanding, such testimony does not naturally lend itself to use in determining whether molestation occurred (an improper use), but only to evaluating whether the children's conduct was or was not consistent with the conduct of someone who has been molested, and in evaluating the believability of their testimony (a proper use).  (See CALCRIM No. 1193.)

Second, the instructions that were given properly instructed the jury how to consider witness testimony, including expert witness testimony, even though no specific instruction regarding CSAAS testimony was given.  The jurors were instructed, among other things, that they, and they alone, must decide the facts based on the evidence, and that they, and they alone, must judge the credibility or believability of witnesses.  The jurors were further instructed they were not required to accept any opinions that witnesses (whether qualified as experts or not) might have offered.  Defendant's authority involving jury instructions that "'improperly invaded the province of the jury to determine the facts and assess the credibility of witnesses,'" is inapposite.

Finally, the children themselves both testified at trial, and each explained their own reasons for not immediately reporting the sexual abuse they had suffered.  Thus, this is not a circumstance where the jurors had to rely on secondhand accounts of a child's statements and demeanor to determine the credibility of the child's allegations.  Rather,

24

the jurors had an opportunity to judge those issues for themselves, based on victim 1's and victim 2's responses on the witness stand. In light of the instructions given, emphasizing that the determination of the facts and assessing witness credibility are solely the province of the jury, we find it highly unlikely jurors placed undue weight on any opinions in that regard that might arguably be inferred from the testimony of Dr. Young-Snodgrass or Detective Gray.

In short, under these circumstances, we find no reasonable probability that the jury would have returned a verdict more favorable to defendant, had a limiting instruction been given. Reversal is therefore not required, even assuming that the failure to give such an instruction sua sponte constituted error.

**6. Defendant Suffered No Prejudice From Trial Counsel's Failure to Request a Limiting Instruction on CSAAS Evidence.**

Having concluded that any error for failing to instruct the jury with a limiting instruction was harmless, we need not discuss at length defendant's ineffective assistance of counsel claim, which is based on lack of any request for such an instruction. Even assuming counsel's failure to make the request was professionally deficient, defendant's inability to show prejudice is fatal to the claim. (*People v. Ledesma* (1987) 43 Cal.3d 171, 217.)

25

## III.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
                    J.

We concur:


RAMIREZ
            P.J.

RICHLI
            J.