Filed 7/29/22 P. v. Harper CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G059843 |
| v. | (Super. Ct. No. 19NF0897) |
| DAVID LEE HARPER, JR., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Jeannie M. Joseph, Judge. Affirmed with modifications.

Mary Woodward Wells, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Seth Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

David Lee Harper, Jr., appeals from a 28-years-to-life sentence following his convictions for battery and assault with force likely to cause great bodily injury. He contends his convictions must be reversed because the trial court improperly instructed the jury with CALCRIM Nos. 3471 and 3472, which address limitations of the right to self-defense. As discussed below, we conclude there was substantial evidence to support the giving of those instructions. Harper also contends the sentencing minute order and abstract of judgment do not conform with the oral pronouncement of judgment, and we conclude remand for resentencing is appropriate. The judgment is affirmed in all other respects.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *Harper's Assault of the Victim*

At trial, K.S. testified that on the evening of January 23, 2019, she and her fiancée, John H., walked to a liquor store near their apartment. Inside the store, they encountered Harper and his companion. Harper asked K.S., "[d]o you want to make some cash?" She responded by telling Harper to speak with her fiancée John. Subsequently, Harper and John had a heated verbal altercation, which concluded with John telling Harper, "Let's go outside." Everyone walked outside and K.S. thought the two men were going to fight. Fortunately, the store's clerk walked outside and defused the situation.

Harper and his companion then left in a white Jaguar, while K.S. and John began walking home. K.S. saw the white Jaguar pass them on the other side of the street before making a U-turn. John told K.S., "They are going to come back and they are going to get out of the car right now. They are going to jump me." As the Jaguar approached them, it slowed down and Harper's companion jumped out from the passenger side. John walked towards the Jaguar, and began fighting with Harper's companion. Harper exited the driver's side of the Jaguar, and while John was focused on

2

his companion, punched John in the side of the head. John immediately fell to the ground unconscious. Harper and his companion then punched and kicked John in his face and chest. K.S. started screaming and pushing the men away from John. Harper and his companion then left in the Jaguar.

John was semiconscious for three days. K.S. testified that John became more lethargic after the attack, sometimes needing help bathing and falling while walking. A neurosurgeon opined John suffered a traumatic brain injury as a result of the attack.

Harper testified that after the confrontation at the liquor store, he and his companion drove to a nearby "weed shop." Because he could not find parking, he turned the vehicle around and was driving in the direction of the liquor store when he saw John run out into the street. Harper noticed his passenger door "unexpectedly" had opened, and thought John might have done it. When Harper stopped the car, he saw John fighting with his companion. Harper thought it was going to be "a mutual, mutual just them fighting." However, when Harper saw K.S. pull out a knife, he exited the Jaguar, "swung once" at John, and ran back to his car.

B. *Information, Verdict and Sentence*

The information against Harper alleged he committed battery (count 1; Pen. Code, § 243, subd. (d)), and assault with force likely to produce great bodily injury (GBI) (count 2; Pen. Code, § 245, subd. (a)(4)).[1] As to both counts, it was alleged that Harper personally inflicted GBI. It was further alleged that Harper had suffered four prior convictions for offenses constituting "strikes" within the meaning of the Three Strikes Law, two prior serious felony convictions within the meaning of section 667, subdivision

---

[1] All further statutory references are to the Penal Code.

(a)(1), and had served two prior prison terms within the meaning of section 667.5, subdivision (b).[2]

A jury found appellant guilty of both counts and found the GBI allegations true. In a bifurcated trial on the prior allegations, the jury found all the priors allegations to be true. The trial court orally imposed a life sentence.

## II

### DISCUSSION

A. *Jury Instructions*

Harper contends the trial court improperly instructed the jury on the initial aggressor and mutual combat exceptions to the right of self-defense (CALCRIM No. 3471) and the doctrine of contrived self-defense (CALCRIM No. 3472) because no substantial evidence supported the giving of these instructions. (See *People v. Guiton* (1993) 4 Cal.4th 1116, 1129 ["It is error to give an instruction which, while correctly stating a principle of law, has no application to the facts of the case."].) "We determine whether a jury instruction correctly states the law under the independent or de novo standard of review." (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.)

The trial court instructed the jury with CALCRIM No. 3471, which provides: "A person who engages in a mutual combat or starts a fight has a right to self-defense only if: [¶] No. 1. He actually and in good faith tried to stop fighting; [¶] No. 2. He indicated by word or by conduct to his opponent in a way that a reasonable person would understand that he wanted to stop fighting, and that he has stopped fighting; [¶] And [¶] No. 3. He gave his opponent a chance to stop fighting. [¶] If the defendant meets these requirements, he then had a right to self-defense if the opponent continued to fight. [¶] . . . A fight is mutual combat when it began or continued by mutual consent or

[2] The information originally alleged Harper had five prior strikes, but the court later granted the People's motion to dismiss one of the strikes as duplicative.

4

agreement. That agreement may be expressly stated or implied and must occur before the claim to self defense arose."

Harper argues there was no evidence he started a fight or engaged in mutual combat, so CALCRIM No. 3471 should not have been given. However, there was such evidence. Specifically, K.S. testified the confrontation between Harper and John at the liquor store had concluded, and John was walking home when Harper made the U-turn and drove toward John. Harper's companion then exited the car. John, who believed the two men would "jump" him, walked toward the Jaguar and a fight broke out between John and Harper's companion during which Harper punched John from the blindside and knocked him unconscious. From this evidence, the jury could have concluded Harper started the fight when he pursued John in the Jaguar. Alternatively, the jury could have concluded Harper expressed an intent to fight John when he drove toward him.

The trial court also instructed the jury with CALCRIM No. 3472, which provides: "A person does not have the right to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse to use force." In *People v. Enraca* (2012) 53 Cal.4th 735, 761, our Supreme Court explained that the self-defense doctrine "'may not be invoked by a defendant who, through his own wrongful conduct (e.g., the initiation of a physical attack or the commission of a felony), has created circumstances under which his adversary's attack or pursuit is legally justified.'" Harper argues no substantial evidence supported a finding he provoked a fight or quarrel with the intent to create an excuse to use force. A reasonable jury, however, could conclude Harper created the circumstances under which John's fight with Harper's companion was justified. Specifically, the evidence showed that minutes after a heated altercation with John, Harper drove a vehicle toward John and Harper's companion jumped out of the moving vehicle and began fighting John. In sum, substantial evidence supported the giving of CALCRIM Nos. 3471 and 3472.

5

B. *Sentencing*

The parties agree there are multiple discrepancies between the trial court's oral pronouncement of sentence and the sentencing minute order and abstract of judgment, which require remand for resentencing. They dispute, however, the extent of those errors and the scope of the remand. The sentencing discrepancies fall into three categories: (1) oral imposition of fines and assessments; (2) oral pronouncement of sentence on count 1 and various enhancements; and (3) calculation of presentence custody credits. As to fines and assessments, the trial court orally imposed a $1,000 restitution fine, but failed to orally impose and stay a parole revocation fine in the same amount. (See *People v. Smith* (2001) 24 Cal.4th 849, 853 ["Under section 1202.45, a trial court has *no* choice and *must* impose a parole revocation fine equal to the restitution fine"].) The trial court also failed to orally impose the mandatory assessments under section 1465.8, subdivision (a)(1), and Government Code section 70373, subdivision (a)(1). We conclude the proper remedy is to remand for the superior court to impose the parole revocation fine, and to determine whether Harper can pay the court operations and criminal courts assessments and orally impose those assessments if appropriate.

As to the sentence on count 1, the parties agree remand is required for the superior court to select a sentence on the count and stay execution of that sentence. They also agree the abstract of judgment must be corrected to reflect the fact the trial court struck the two serious felony enhancements for sentencing purposes only. The parties, however, disagree whether the trial court orally imposed a three-year sentence on the GBI enhancement. After careful review we conclude the court's oral pronouncement of sentence on the GBI enhancement is sufficiently ambiguous that remand is appropriate for the trial court to reconsider the three-year sentence on the GBI enhancement.

Finally, the parties agree Harper's presentence credits were miscalculated. Because we are remanding the matter, we will order the trial court to recalculate the custody credits. (See *People v. Buckhalter* (2001) 26 Cal.4th 20, 29 ["[W]hen a prison

6

term already in progress is modified as the result of an appellate sentence remand, the sentencing court must recalculate and credit against the modified sentence *all actual time* the defendant has already served, whether in jail or prison, and whether before or since he was originally committed and delivered to prison custody."].)

III

DISPOSITION

The matter is remanded for the trial court (1) to determine Harper's ability to pay various fine and assessments, (2) to orally pronounce the correct parole revocation fine and assessments, (3) to reconsider the three-year sentence on the GBI enhancement, (4) to recalculate the presentence custody credits, and (5) to modify the abstract of judgment to reflect the oral pronouncement of sentence, including the stayed sentence on count 1 and the serious felony enhancements. In all other respects, the judgment is affirmed.

BEDSWORTH, J.

WE CONCUR:

O'LEARY, P. J.

GOETHALS, J.

7