Filed 10/3/24  P. v. Parejascruz CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>EDGAR PAREJASCRUZ,<br><br>    Defendant and Appellant. | G062769<br><br>(Super. Ct. No. RIF1803571)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Riverside County, William R. Chidsey, Jr., Judge. (Retired judge of the L.A. Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles Ragland, Assistant Attorney General, Natasha Cortina and Arlyn Escalante, Deputy Attorneys General, for Plaintiff and Respondent.

Edgar Parejascruz appeals from a judgment following his convictions for committing sex crimes against minors. He contends the jury should not have been presented with expert opinions on what is known as the child sexual abuse accommodation syndrome (CSAAS), a theory that addresses behaviors of victims of childhood sexual abuse. We affirm the judgment.

FACTS[1]

*A. Charges and Non-Expert Evidence*

In 2019, then 40-year-old Parejascruz was charged with 10 counts of sexual abuse committed against three children under the age of 14, based on events beginning in 2007.[2] At a 2021 trial, three victims—D.G., L.G. and J.M.—testified about his past conduct.

D.G., testifying as an adult, claimed that Parejascruz began molesting her when she was four or five years old, while at the home of a babysitter who was related to Parejascruz and resided with him. Similarly, D.G.'s sister, L.G., claimed that Parejascruz molested her years ago, beginning when she was four or five years old. We will sometimes refer to D.G. and L.G. collectively as the sisters.

---

[1] Our factual summary is limited to issues raised in this appeal.

[2] The counts alleged violations of the following Penal Code sections (all undesignated statutory references are to this code): 269, subdivision (a)(4) (count 1); 288.7, subdivision (b) (count 2); 288, subdivision (a) (count 3); 288, subdivision (a) (count 4); 269, subdivision (a)(5) (count 5); 288.7, subdivision (b) (count 6); 288.7, subdivision (b) (count 7); 288, subdivision (b)(1) (count 8); 288, subdivision (b)(1) (count 9); and 288, subdivision (b)(1) (count 10). The prosecutor also alleged the number of victims triggered enhanced sentencing penalties. (§ 667.61, subd. (e)(4).)

The third victim-witness was Parejascruz's stepdaughter, J.M., who testified as an adult that Parejascruz began sexually abusing her when she was six years old. J.M. recalled in her trial testimony: "I felt like I was the one who was going to get in trouble for it. I felt like it was my fault."

J.M. had been childhood friends with the sisters. In 2015, when J.M. was around 11 or 12 years old, she talked to the sisters about her experience of past sexual abuse by Parejascruz. D.G. confirmed at trial that J.M. made the 2015 disclosure. D.G. also testified that she then talked to J.M. about her own past sexual abuse experiences with Parejascruz and, for the first time, heard her sister, L.G., say that she too had been molested.

J.M. and D.G. both testified that during their 2015 disclosures, J.M. asked the sisters to not say anything about the abuse because she wanted to protect her family: her mother, her little brothers (Parejascruz's biological sons), and Parejascruz himself who was the family's sole source of income. The three girls kept the abuse secret for the next three years.

J.M. testified that in 2018 she became "fed up" because she "felt like" Parejascruz, who she considered to be her father, was "trying to control [her] life all the time." J.M. disclosed the past sexual abuse to her mother, who confronted Parejascruz. J.M.'s mother kicked Parejascruz out of their home but did not contact law enforcement. At the same time, the sisters disclosed to their mother that Parejascruz had sexually abused them in the past. They explained they had kept quiet to avoid "break[ing] up [J.M.'s] family."

A police report was filed and the victims were interviewed. Relevant to this appeal, J.M. was interviewed in 2018 by multiple individuals, including a police detective and a child protective services

worker. Transcripts of interviews and videos of some were presented to the jury at trial. J.M. talked about Parejascruz saying he would be hurt if J.M. disclosed his behavior. J.M. also detailed past experiences, such as how Parejascruz would digitally penetrate her and that Parejascruz would unlock the bathroom door while J.M. was showering and molest her.

Three days after one of the interviews, J.M. called the interviewer to recant her claim that Parejascruz had sexually abused her. J.M. told the interviewer, both over the phone and in person, that she had made the claim falsely, out of anger because Parejascruz had taken away her cell phone after her school grades had fallen. When the interviewer asked J.M. if anybody had coerced her to change her claim, J.M. was "adamant that no one influenced" her. During cross-examination at trial, J.M. was questioned about her return to her original accusations in light of her earlier recantation. She testified: "I kept lying to [the interviewer] telling her that [Parejascruz] didn't do nothing to me, because I was trying to protect him."

When Parejascruz testified at trial, he asserted that all of the victims were lying about him. He testified about his typical work schedule: "When I would arrive home from either work or the gym, [J.M. and his biological children] would be already asleep."

When asked about J.M.'s mother's description of Parejascruz's reaction to her confrontation, he testified the mother "wanted to put those words in my mouth that I asked for forgiveness and apologize[d], but how am I going to apologize for something I did not do?" During closing arguments, Parejascruz's trial counsel detailed J.M.'s inconsistent statements surrounding her recantation and asked the jury: "is this young lady someone that can tell the truth?"

4

*B. Expert Witness Testimony on CSAAS*

During the prosecution's case-in-chief, the jury was presented with expert opinion testimony by clinical forensic psychologist Jody Ward, who testified about CSAAS. During pretrial motions the month before, the trial court overruled Parejascruz's objections, which were based in part on Evidence Code section 352, regarding the admissibility of CSAAS evidence.

Ward told the jury she had no knowledge about the facts of this matter. She conceded that children can lie about being molested and that CSAAS cannot be used as a tool to diagnose whether sexual abuse occurred in a specific case. Ward explained that, assuming that abuse had occurred, CSAAS covered five types of "counterintuitive" behaviors that could be displayed by victims: secrecy, helplessness, entrapment, delayed unconvincing disclosure, and recantation.

*C. Jury Instruction on CSAAS and Verdicts*

Before its deliberations began, the jury was instructed on CSAAS, based on CALCRIM No. 1193, as follows: "You have heard testimony from . . . Ward regarding [CSAAS]. [¶] . . . Ward's testimony about [CSAAS] is not evidence that the defendant committed any of the crimes charged against him. [¶] You may consider this evidence only in deciding whether or not [the alleged victims'] conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of their testimony." The court also instructed the jury with standard instructions on, inter alia, the requirement of proof beyond a reasonable doubt (CALCRIM No. 220) and the jury's prerogative to accept or reject expert witness testimony (CALCRIM No. 332).

The jury found Parejascruz guilty on all counts related to J.M. (counts 5–10) but hung on all counts related to the sisters (counts 1–4).[3] The trial court sentenced Parejascruz to a total prison term of 45 years to life, consisting of a 30-years-to-life indeterminate sentence and a consecutive 15-year determinate sentence. Parejascruz timely filed this appeal.

DISCUSSION

Parejascruz asserts four grounds for reversal: (1) that expert testimony on CSAAS should have been prohibited as unduly prejudicial, pursuant to Evidence Code section 352; (2) that the admission of the testimony deprived Parejascruz of due process and a fair trial because it unfairly corroborated victim testimonies; (3) that the jury instruction on CSAAS was prejudicially erroneous; and (4) that the instruction "lessened the prosecution's burden of proving guilt beyond a reasonable doubt."

*A. Challenge to Admission of CSAAS Expert Testimony*

"A trial court's decision to admit evidence is reviewed for an abuse of discretion. [Citation.]" (*People v. Lapenias* (2021) 67 Cal.App.5th 162, 170 (*Lapenias*).) "The test for abuse of discretion is whether the trial court's decision exceeded the bounds of reason. [Citation.] . . . [T]he reviewing court measures the evidence presented to the trial court against the range of options permitted by the established legal criteria. [Citation.] The scope of the trial court's discretion is limited by the governing law, and an action that ""transgresses the confines of the applicable principles of law"" constitutes an

---

[3] The jury therefore did not find true the sentencing enhancement allegation on multiple victims. Subsequently, the prosecutor added two counts of misdemeanor assault (regarding the sisters) that Parejascruz pleaded guilty to (§ 240). The court then dismissed the four original counts that the jury had hung on.

abuse of discretion. [Citation.]" (*Cornerstone Realty Advisors, LLC v. Summit Healthcare REIT, Inc.* (2020) 56 Cal.App.5th 771, 789.)

Parejascruz's first contention relies on Evidence Code section 352, which states: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." On the admissibility of CSAAS evidence, the governing authority remains *People v. McAlpin* (1991) 53 Cal.3d 1289 (*McAlpin*). There, the California Supreme Court affirmed the convictions of a man who was accused of molesting a minor whose mother did not report to anyone her daughter's disclosure of molestation to her. (*Id.* at pp. 1294, 1296 [minor reported to school personnel one year after telling mother].)

Relevant to this appeal, the *McAlpin* court approved of the following two rules that had developed in intermediate appellate courts to that point: (1) "expert testimony on the common reactions of child molestation victims is not admissible to prove that the complaining witness has in fact been sexually abused," but (2) such testimony "is admissible to rehabilitate such witness's credibility when the defendant suggests that the child's conduct after the incident—e.g., a delay in reporting—is inconsistent with his or her testimony claiming molestation. [Citations.]" (*McAlpin, supra*, 53 Cal.3d at pp. 1300–1301.) *McAlpin* reasoned that "'[s]uch expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior.'" (*Id.* at p. 1301.) The high court applied

the above rules without distinguishing between whether the victim or the victim's parent was the one who had delayed reporting. (*Ibid.*)

Recently, this court applied *McAlpin'*s holdings in *Lapenias* to affirm convictions of a man who had sexually abused his minor stepdaughter. (*Lapenias, supra*, 67 Cal.App.5th at pp. 167, 171, 183.) As in this matter, several years elapsed before the stepdaughter disclosed the abuse she suffered to her friend. (*Id.* at p. 168.)

We held, inter alia, that the trial court had not erred in allowing the prosecution to present the jury with CSAAS evidence (*Lapenias, supra*, 67 Cal.App.5th at p. 175) and our analysis there covers Parejascruz's challenges in this appeal. On Evidence Code section 352, we held that, "[g]iven the evidence regarding [the victim]'s reactions to her sexual abuse was, in fact, consistent with the proffered CSAAS evidence, we agree with the trial court that the CSAAS evidence was 'sufficiently probative to be admissible'" (*id.* at p. 172; *id.* at p. 171 [must be triggered by trial contentions]) and that the "[trial] court made a reasoned judgment that the probative value of the proffered CSAAS evidence was substantially outweighed by any prejudicial effect" under Evidence Code section 352 (*id.* at p. 174). On due process, we held that, "[g]enerally, a [trial] court's compliance with the rules of evidence does not violate a defendant's right to due process." (*Ibid.*)

Parejascruz's briefing does not mention *Lapenias*, which we apply to this appeal to conclude that his contentions on the admission of CSAAS evidence are without merit. It remains a well-established principle of California law that "[w]hile CSAAS evidence is not relevant to prove the alleged sexual abuse occurred [in a specific case], . . . CSAAS evidence is

8

relevant for the limited purpose of evaluating the credibility of an alleged child victim of sexual abuse." (*Lapenias, supra*, 67 Cal.App.5th at p. 171.)

Parejascruz asserts that caselaw "need[s] to be reexamined," but does not offer any meaningful analysis of the probative value of CSAAS. (*Lapenias, supra*, 67 Cal.App.5th at p. 174 ["Evidence is not 'prejudicial' merely because it is harmful to a criminal defendant's case"].) For example, Parejascruz asserts "[a] jury easily can misconstrue CSAAS evidence," but does not discuss CSAAS's value in explaining counterintuitive reactions to uncommon human experiences. (See Evid. Code, § 801 [expert testimony should be "[r]elated to a subject that is sufficiently beyond common experience" and be reasonably reliable].)

Parejascruz has not shown that admitting Ward's expert testimony on CSAAS violated applicable law and therefore amounted to an abuse of trial court discretion. Similarly, given it is undisputed that Ward did not offer testimony specific to the abuse alleged by J.M. in this matter, we reject Parejascruz's conclusory assertion that Ward supported J.M.'s account of specific abuse in a manner that violated Parejascruz's right to due process.

*B. Challenge to Jury Instruction*

Next, "[t]he independent or de novo standard of review is applicable in assessing whether instructions correctly state the law [citations] and also whether instructions effectively direct a finding adverse to a defendant by removing an issue from the jury's consideration. [Citations.]" (*People v. Posey* (2004) 32 Cal.4th 193, 218.) "'The challenged instruction is viewed "in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner." [Citation.]' [Citation.] We assume

9

the jurors are intelligent people and are capable of understanding and correlating the instructions given. [Citation.]" (*People v. Ocegueda* (2023) 92 Cal.App.5th 548, 557.) "Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation." (*People v. Laskiewicz* (1986) 176 Cal.App.3d 1254, 1258.)

Parejascruz's argument for prejudicial error focuses on the following italicized language in the final paragraph of the earlier-quoted instruction on CSAAS: "You may consider this evidence only in deciding whether or not [the sisters'] and [J.M.]'s conduct was not inconsistent with the conduct of someone who has been molested, *and in evaluating the believability of their testimony*." (Italics added.)

The italicized segment is verbatim the same as the model jury instruction, CALCRIM No. 1193.[4] Parejascruz argues: "The admonition that the jurors could consider the CSAAS testimony in appraising the complaining witnesses' credibility was erroneous because the jurors should be instructed simply that CSAAS testimony is admissible solely to explain that the victims' response to the sexual abuse is not inconsistent with molestation, and the expert's testimony may not be relied on to evaluate whether the victims' molestation claim is true." In other words, Parejascruz argues the segment

---

[4] The paragraph of the model instruction that includes the segment states: "You may consider this evidence [i.e., CSAAS evidence] only in deciding whether or not \_\_\_\_\_'s *<insert name of alleged victim of abuse>* conduct was consistent with the conduct of someone who has been molested, and in evaluating the believability of the alleged victim." (CALCRIM No. 1193.) There is no material difference between the versions of CALCRIM No. 1193 that was used here and in Lapenias's trial (*Lapenias, supra*, 67 Cal.App.5th at p. 175).

transgressed *McAlpin*'s prohibition against using CSAAS evidence "to prove the alleged sexual abuse occurred [in a specific case]." (*Lapenias, supra,* 67 Cal.App.5th at p. 171.)

Parejascruz provides no reason to depart from our analysis in *Lapenias*, which included reviewing a challenge to CALCRIM No. 1193. (*Lapenias, supra,* 67 Cal.App.5th at pp. 171, 175–176 ["slightly modified" version of CALCRIM No. 1193 accurately informed jury about governing law, including CSAAS's irrelevance for deciding whether "the alleged sexual abuse [underlying the case] occurred"].) We concluded the version of CALCRIM No. 1193 used there conformed to the two *McAlpin* rules we quoted above: "CSAAS evidence 'is not admissible to prove that the complaining witness has in fact been sexually abused; it is admissible to rehabilitate such witness's credibility when the defendant suggests that the child's conduct after the incident—e.g., a delay in reporting—is inconsistent with his or her testimony claiming molestation.'" (*Lapenias, supra,* 67 Cal.App.5th at p. 175.)

We need not decide the parties' dispute about whether Parejascruz forfeited his instruction challenge by failing to assert it in the trial court. (Compare *People v. Ramos* (2008) 163 Cal.App.4th 1082, 1087 [argument that jury instruction misstated law not forfeited despite failure to object at trial] with *People v. Bedolla* (2018) 28 Cal.App.5th 535, 544 ["not convinced" substantial rights were affected as contemplated by Pen. Code, § 1259].) We assume without deciding that he did not forfeit his challenge and conclude that, in any case, it provides no ground for reversal because it is meritless.

Parejascruz's jury instruction challenge is unpersuasive because it rests on a premise that the jury was not able to understand and apply the

11

instructions on how to implement the presented information about CSAAS. (*People v. Ocegueda, supra*, 92 Cal.App.5th at p. 557.) His premise is not only contrary to general appellate review principles, it is contrary to the record in this specific case. Parejascruz does not discuss the ordinary meaning of the other instructions surrounding the segment. He therefore has not shown a "'"reasonable likelihood the jury applied the instruction [segment] in an impermissible manner." [Citation.]' [Citation.]" (*People v. Ocegueda, supra*, 92 Cal.App.5th at p. 557.) Moreover, the fact that the jury found J.M.'s claims sufficiently credible to convict on her assertions while being unable to reach verdicts on the sisters' claims, based on the same deliberation instructions, reinforces a conclusion that the jury soundly applied the challenged instruction, instead of misunderstanding it.

The same reasoning applies to Parejascruz's contention that the trial court's instruction "lessened the prosecution's burden of proving guilt beyond a reasonable doubt," since it is undisputed that the standard instruction on proving criminal liability beyond a reasonable doubt (CALCRIM No. 220) guided the jury's deliberations. In sum, there was no instructional error.

## DISPOSITION

The judgment is affirmed.


O'LEARY, P. J.

WE CONCUR:


MOTOIKE, J.


GOODING, J.