Filed 6/8/26  P. v. Myers CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　v.<br><br>TERRY LYN MYERS,<br><br>　　Defendant and Appellant. | G064087<br><br>(Super. Ct. No. 22WF0512)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Lance P. Jensen, Judge. Affirmed.

Elizabeth Campbell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Collette C. Cavalier and Ksenia Gracheva, Deputy Attorneys General, for Plaintiff and Respondent.

\*　　　　\*　　　　\*

A jury convicted defendant Terry Lyn Myers of one count of aggravated sexual assault of a child involving penetration by a foreign object (Pen. Code, § 269, subd. (a)(5); count 1),[1] three counts of aggravated sexual assault of a child involving oral copulation (§ 269, subd. (a)(4); counts 2, 3, and 4), two counts of aggravated sexual assault of a child involving sodomy (§ 269, subd. (a)(3); counts 6 and 7), and two counts of engaging in a lewd or lascivious act with a minor (§ 288, subd. (a); counts 5 and 8). As to counts 5 and 8, the jury also found true allegations that the prosecution was timely because the victim was under 18 years old when the offenses were committed and the prosecution began before the victim's 40th birthday. Defendant later admitted aggravating factors.

The court sentenced defendant to 98 years to life in state prison as follows: (1) six consecutive indeterminate terms of 15 years to life on counts 1, 2, 3, 4, 6, and 7; (2) a consecutive term of six years on count 5; and (3) a consecutive term of two years on count 8.

Defendant raises two primary arguments on appeal. First, he contends the court erred by admitting expert testimony on child sexual abuse accommodation syndrome (CSAAS). Second, he argues the court erred by instructing the jury with CALCRIM No. 1193. He claims these errors violated his right to due process and a fair trial. For the reasons *post,* we disagree with defendant's contentions and affirm the judgment.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

## STATEMENT OF FACTS

### I.

#### THE VICTIM'S TESTIMONY

At trial, the victim testified he lived with defendant, who was his uncle, his aunt, and his cousin for a few years while his mother was incarcerated. The victim was around eight years old when he first moved into defendant's home. He described himself as a child who was "an absolute terror" and in trouble for "chronic lying."

Among other things, the victim recalled various instances of sexual abuse from 1997 to 2001. For example, defendant made the victim watch pornography while defendant masturbated. The victim believed this happened at least 20 times. Defendant also performed oral sex on the victim about 20 times and had the victim perform oral sex on him. When the victim was around 10 years old, defendant had him insert a hot dog and cucumber in defendant's anus. Defendant later made two dildos, which defendant and the victim used to penetrate each other. Defendant penetrated the victim with his penis at least two times, and the victim penetrated defendant with his penis three times at most. Finally, on one occasion, defendant invited a woman inside of his car to perform oral sex on him while the victim was in the car.

When asked why he did not report the abuse, the victim testified he thought it was a secret. He also thought it was "maybe . . . something everybody goes through and does." He later worried he would cause a rift in the family if he disclosed the abuse and was concerned about being perceived as gay.

## II.

### THE VICTIM'S DISCLOSURES TO OTHERS AND THE POLICE

The victim did not tell anyone about the sexual abuse until college when he told a friend. He disclosed that he was sexually abused as a child and performed oral sex on someone he trusted. The victim later told his wife about the sexual abuse. His wife encouraged him to report the abuse when they saw defendant around other children. After a few years in therapy, the victim reported the sexual abuse to police in 2021.

## III.

### DEFENDANT'S ADMISSIONS AND ARREST

A detective arranged a covert recorded telephone call between the victim and defendant. During the call, defendant acknowledged he did things he "shouldn't have" done. When the victim asked defendant about specific acts of abuse, defendant said he saw those acts in "pornos and magazines" and described the abuse as "fleshy desire."[2]

In 2022, a detective and investigator approached defendant in a public parking lot to discuss their investigation. Defendant agreed to speak and admitted he had an incident with the victim involving "some molestation" about 20 years ago. He further admitted they sodomized each other and performed oral sex on each other. But he denied pornography was involved and insisted the abuse all occurred in one incident.

After defendant was arrested and advised of his *Miranda*[3] rights, he willingly spoke to two detectives. Defendant indicated all of the abuse

---

[2] A recording of the telephone call was admitted into evidence and played for the jury.

[3] *Miranda v. Arizona* (1966) 384 U.S. 436.

4

occurred "in the same timeframe" and described specific acts, including oral sex, sodomy, and penetration with a hot dog. He denied abusing the victim over the course of four years and did not remember watching pornography around the victim. He noted he discussed the abuse with the victim several times and eventually stopped the abuse because the "holy Spirit was really convicting [sic]" him to stop.[4]

## IV.

### EXPERT WITNESS TESTIMONY ON CSAAS

During pretrial motions, defendant moved to exclude expert testimony on CSAAS on the grounds that CSAAS did not meet the *Kelly*[5] standard of reliability for scientific methods. Defendant alternatively argued the testimony should be limited to attack the victim's credibility based on a myth or misconception suggested by the evidence. He likewise requested the court instruct the jury with CALCRIM No. 1193.

The court ultimately allowed the expert testimony, holding it would not be admitted "for the purpose of rendering an opinion or bootstrapping some type of an opinion that a molestation actually occurred and it was done by [defendant]." Instead, the court noted it "[was] more of an educational tool to dispel any myths as to why someone might wait so long to report this." The court added that it would admonish the jury with appropriate instructions.

---

[4] Recordings of the field interview in the public parking lot and the *Miranda* interview were admitted into evidence and played for the jury.

[5] *People v. Kelly* (1976) 17 Cal.3d 24 (*Kelly*), superseded by statute on another ground as explained in *People v. Wilkinson* (2004) 33 Cal.4th 821, 845.

During the prosecution's case-in-chief, the jury was presented with the expert testimony of Dr. Martha Rogers, a forensic neuropsychologist who testified about CSAAS. At the outset, Rogers testified she had no knowledge about the facts or allegations of the case. Among other things, she explained the five stages of CSAAS: secrecy, helplessness, entrapment and accommodation, disclosure, and retraction. As to disclosure, she testified some victims never disclose the abuse. If they do disclose, the disclosure may be delayed, partial, or unconvincing. Rogers further agreed a child may exhibit all five characteristics of CSAAS but this does not establish the child was, in fact, sexually abused.

## DISCUSSION

Defendant argues the court erred by admitting expert testimony on CSAAS and improperly instructed the jury with CALCRIM No. 1193. The court did not err.

## I.

### THE COURT DID NOT ERR BY ADMITTING EXPERT TESTIMONY ON CSAAS

Defendant asserts several grounds for reversal: (1) the prosecution did not establish a proper foundation to introduce expert testimony on CSAAS; (2) Rogers' testimony should have been excluded as unduly prejudicial pursuant to Evidence Code section 352; (3) Rogers' testimony should have been excluded because CSAAS is scientifically unreliable; and (4) the error in admitting Rogers' testimony was prejudicial and deprived defendant of his right to due process and a fair trial. We address each in turn below.

A. *Applicable Law and Standard of Review*

"No evidence is admissible except relevant evidence." (Evid. Code, § 350.) "'Relevant evidence' means evidence, including evidence relevant to

6

the credibility of a witness . . . , having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (*Id.*, § 210.) "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (*Id.*, § 352.)

"A trial court's decision to admit evidence is reviewed for an abuse of discretion." (*People v. Lapenias* (2021) 67 Cal.App.5th 162, 170 (*Lapenias*).)

## B. No Abuse of Discretion

Here, the court did not err by admitting Rogers' testimony on CSAAS. Indeed, expert testimony on CSAAS is used to explain how minor victims of sexual abuse commonly react. (*People v. Bowker* (1988) 203 Cal.App.3d 385, 394.) "Trial courts may admit CSAAS evidence to disabuse jurors of five commonly held 'myths' or misconceptions about child sexual abuse." (*Lapenias, supra,* 67 Cal.App.5th at p. 171.) Although "CSAAS evidence is not relevant to prove the alleged sexual abuse occurred, it is well established in California law CSAAS evidence is relevant for the limited purpose of evaluating the credibility of an alleged child victim of sexual abuse." (*Ibid.*)

According to defendant, the prosecutor did not establish the foundation necessary to admit expert testimony on CSAAS because there was no "suggestion by the defense that [the victim] had not behaved in a way expected of a victim of childhood sexual abuse." To the contrary, admitting CSAAS evidence "is not error merely because it was introduced as part of the prosecution's case-in-chief rather than in rebuttal." (*People v. Patino* (1994)

7

26 Cal.App.4th 1737, 1745.) CSAAS evidence is admissible if the victim's credibility is at issue "due to . . . paradoxical behavior, including a delay in reporting a molestation." (*Id.* at pp. 1744–1745.)

Here, the victim's credibility was at issue for several reasons. He significantly delayed reporting defendant's abuse to law enforcement, and he testified he was a "chronic liar" as a child. The victim also indicated the abuse occurred over several years, but defendant claimed the abuse occurred over a shorter period of time. For these reasons, Rogers' testimony was admissible to assess the victim's credibility and to disabuse the jury of any misconceptions they had about child sexual abuse. The testimony also could explain how the victim's secrecy and delayed disclosures were typical reactions among children who are sexually abused.

Defendant next argues the expert testimony was unduly prejudicial because there was no proper purpose for the testimony and the jury heard about the traumatic effects of child sexual abuse. (Evid. Code, § 352.) Not so. As noted *ante*, the evidence was probative. It also was not unduly prejudicial because Rogers never testified about the facts of the instant case or defendant's guilt. In fact, she acknowledged a child who exhibits the characteristics of CSAAS does not mean the child was, in fact, sexually abused.

Defendant further claims Rogers' testimony should have been excluded because CSAAS evidence is not scientifically reliable under the *Kelly* rule. In *Lapenias*, another panel of this court held expert testimony on CSAAS is not scientific evidence subject to the *Kelly* rule. (*Lapenias*, *supra*, 67 Cal.App.5th at p. 173.) We agree with the reasoning in *Lapenias* and therefore disagree with defendant's contention.

In short, the court did not abuse its discretion by admitting expert testimony on CSAAS. Defendant accordingly was not denied due process or a fair trial, and we need not address the parties' arguments as to whether any error was prejudicial.

II.

## THE COURT PROVIDED APPROPRIATE JURY INSTRUCTIONS

Defendant asserts the court's CALCRIM No. 1193 instructions were deficient because they directed the jury to use the CSAAS evidence for improper inferences—i.e., assessing the victim's believability and determining if the victim's behavior was consistent with having been abused. He concludes the instructions effectively allowed the jury to find him guilty based on the CSAAS evidence, which violated his right to due process and a fair trial. As discussed *post*, the instructions appropriately instructed the jury on the proper uses and limitations of CSAAS evidence.

*A. Relevant Background*

After Rogers' testimony, the court admonished the jury that the testimony "was offered only to explain certain behavior[s] of an alleged victim of child sexual abuse." The court explained Rogers' testimony was "not evidence . . . the defendant committed any of the crimes charged against him." The court further emphasized: "You may consider this evidence only in deciding whether or not the alleged [victim's] conduct in this case . . . was consistent with the conduct of someone who has been molested and in evaluating the believability of the alleged victim."

The court also provided the jury with CALCRIM No 1193, which stated: "Child sexual abuse accommodation syndrome/pattern relates to a pattern of behavior that may be present in child sexual abuse cases. Testimony as to the accommodation syndrome/pattern is offered only to

9

explain certain behavior of an alleged victim of child sexual abuse. [¶] DR. MARTHA ROGER'S testimony about child sexual abuse accommodation syndrome/pattern is not evidence that the defendant committed any of the crimes charged against (him). [¶] You may consider this evidence only in deciding whether not [the victim's] conduct was consistent with the conduct of someone who has been molested, and in evaluating the believability of the alleged victim."

### B. Standard of Review

We review a defendant's claim of instructional error de novo. (*Lapenias*, *supra*, 67 Cal.App.5th at p. 175.) "Review of the adequacy of instructions is based on whether the trial court 'fully and fairly instructed on the applicable law.'" (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.) Where reasonably possible, we interpret the instructions to support the judgment rather than defeat it. (*Ibid.*)

### C. CALCRIM No. 1193

At the outset, we note defendant requested the court provide the CALCRIM No. 1193 instructions if it admitted Rogers' expert testimony. Defendant now insists he requested a different version of the instructions— one that specified CSAAS evidence is admissible to show a victim's reactions are "not inconsistent" with having been molested. He complains the given instructions indicated CSAAS evidence could be used to determine if the victim's conduct "was consistent" with having been molested. Defendant did not explicitly raise this argument in the trial court. Instead, it appears defendant relies on a case he briefly quoted in his motion in limine.

Assuming defendant did not forfeit his arguments, we find no error. The court's instructions were consistent with the Judicial Council's official instruction. (CALCRIM No. 1193.) As explained in *People v. Page*

10

(2025) 114 Cal.App.5th 1022, "[a]n instruction that the jury may consider CSAAS evidence to decide whether or not the alleged victim's conduct was 'consistent with' that of a child who has been sexually abused does not permit any use of the evidence not also permitted by an instruction that the jury may consider the evidence to decide whether or not such conduct was 'not inconsistent with' that of a sexually abused child. The quoted phrases have the same meaning." (*Page*, at p. 1031.) Regardless of which phrase is used, "'the jury is to use the expert testimony to help ground its analysis of the consistency of the complaining witness's conduct . . . . The jury is then to use this "consistency" analysis in its general evaluation of the believability of the complaining witness's testimony.'" (*Id.* at pp. 1031–1032.)

We agree with *People v. Page*, *supra*, 114 Cal.App.5th 1022. The instructions accurately instructed the jury on the proper use and limitations of CSAAS evidence.

## DISPOSITION

The judgment is affirmed.

SANCHEZ, ACTING P. J.

WE CONCUR:

GOODING, J.

SCOTT, J.

11